## BAKER v. DAVIS.

1. Attorney and client: WHEN THE RELATION CEASES: THE LIEN FOR COMPENSATION.  Where an attorney is employed to collect a claim secured by mortgage his relation with his client ceases after foreclosing the mortgage and, under his client's direction, bidding of the land at the sheriff's sale thereunder.

2. —— After the title to the land is vested in his client he has no further duty to discharge toward him, except to deliver to him

the sheriff's deed. But if his fees are not paid he may retain the deed as security therefor.

3. —— His retention of the deed, however, under such circumstances would not have the effect to continue his relation as attorney nor incapacitate him from afterward purchasing the land at tax sale, while the deed remained in his hands and after his fees had remained for a long time unpaid. .

## Appeal from Adams District Court.

### SATURDAY, OCTOBER 11.

ACTION IN CHANCERY. Upon the final hearing plaintiff's petition was dismissed. From this decision he appeals to this court. The facts of the case are found in the opinion.

*T. M. Stuart* for the appellant.

*Frank M. Davis* for the appellee.

BECK, Ch. J. — The facts of this case, as disclosed by the abstract before us, are as follows : Defendant, who is an attorney at law, was employed by one Shaffer to foreclose a mortgage upon lands in Adams county, executed to him by one Riggs, to secure the payment of $425. Suit was brought by the defendant upon the mortgage in the district court of Adams county, in 1858. Before final judgment in the action, which was rendered in October, 1858, Shaffer sold the claim to one Savacool, and, by a separate instrument, assigned the mortgage to him. Of this transfer defendant was advised but continued the prosecution of the suit in Shaffer's name for the benefit of Savacool. The judgment rendered in the case was general and not a foreclosure of the mortgage against the lands described therein. In March following, the lands involved in this suit with other property were sold upon an execution issued on the judgment, and bid in by defendant for and in the name of Savacool, and a certificate of purchase taken accordingly. After the sheriff's sale

and before the time for redemption therefrom had expired, Savacool sold to plaintiff his interest in the claim and lands sold on the judgment, executing a writing or transfer upon the instrument he had received from Shaffer assigning the claim to him. Baker and Savacool both resided in Chariton and defendant in Quincy. Defendant was informed of the last transfer by Baker himself, who went to Quincy to look after the business, and made an effort while there to secure the sheriff's certificate of sale. Defendant would not deliver it to him without payment for his services in the case. Plaintiff refused to pay them on the grounds that the amount charged was too much; that defendant had mismanaged the business, and that he was under no obligation for the payment, which should be made, as he claimed, by Savacool. But it is positively stated by Savacool in his evidence, that Baker bought the claim, subject to defendant's fees, which he agreed to pay. Defendant finally delivered to plaintiff the certificate, receiving from him a writing acknowledging its receipt and agreeing to return it within a time named, or to pay the amount of the fees. The arrangement was made in order to enable Baker to settle the matter of the fees with Savacool, or for some other like purpose. The paper, within the time mentioned therein, was returned, without assignment from Savacool, to defendant. It is not shown that defendant had instructions or directions from Savacool to cause the sheriff's deed to be made to Baker. Defendant testifies positively that he had not, and Savacool, while expressing a belief that he gave such directions, is far from being positive on that point. It is proper here to state that defendant denies that he was informed by plaintiff at any time that he was the owner of the claim, but that he understood plaintiff, when at Quincy, to be acting as the attorney of Savacool. Plaintiff, it may be remarked, as well as defendant, is an attorney at law. Thus far the intercourse between the parties exhibits the

fact that defendant was urging the payment of his fees earned in the action, and plaintiff was as constantly disavowing any obligation to pay them, and insisting beside that they were exorbitant, etc.

Defendant procured the sheriff's deed to be made to Savacool, and deposited it for record with the proper officer. After this Savacool executed a quit-claim deed to Baker, leaving the description of the land blank, intending to insert it when ascertained. This instrument he took to Quincy, but finding the recorder out of his office was unable to ascertain the description of the land. He thereupon called upon defendant, who advised him that the blank in the deed was not sufficient to permit the insertion of the proper description of the property. For this reason the instrument was destroyed and a new one written and acknowledged before defendant, who was a notary. It was left with defendant to be deposited in the recorder's office for record, after blank for the description of the land should be filled in, but no money was paid to him either for his own services in preparing and acknowledging the deed or for the fees of the recorder. This deed defendant did not deliver to the recorder. This was in 1860.

Plaintiff left the State in 1863. After this, his agent at Chariton wrote to Davis in regard to the business, but received no reply. He also wrote to the clerk of the court who advised him that the judgment had been satisfied and receipted by defendant. He wrote again to the clerk, making inquiry about defendant, and was informed that he was absent, and that there had been a sale of lands on the judgment, but the sale had been annulled or abandoned for want of payment of costs. Thereupon the agent made no further inquiry in regard to the business.

In 1865, the lands were sold for delinquent taxes and were purchased by defendant, and in 1868 a treasurer's deed was executed to him. Of the sale and purchase by

defendant, plaintiff was not informed until the time of redemption had passed. Savacool executed another quit-claim deed to plaintiff for the land which was delivered and recorded, but the date of this deed and of its record is not shown in the abstract before us.

Upon this state of facts plaintiff asks that he may be permitted to redeem from the tax deed, or that it be declared void, or that defendant be declared to be his trustee and to hold the land for his benefit, on the ground that the relation of client and attorney existed between plaintiff and defendant at the time of the purchase, and for the further reason that the acts of defendant in the matter were fraudulent, and through them he was prevented paying the taxes upon the lands for which they were sold.

I. We may concede that defendant was the attorney of plaintiff after he became the owner of the claim or sheriff's certificate, and acted as such in procuring the deed. This view we find it unnecessary to discuss, but for the purpose of this case adopt it here.

The next inquiry is, when did that relation cease? Defendant's duty, and he was employed for no other purpose, was to collect the claim secured by the mortgage. In its discharge he brought suit and recovered judgment, and, under the direction of the plaintiff or the party then holding the judgment, he bid off the land at the execution sale. The party holding the judgment directed him to take the land upon the claim. Plaintiff, upon acquiring his interest in the claim, was bound by the acts of the party of whom he purchased, directing this course. Besides he, himself, consented to take the land upon the judgment. Defendant took the sheriff's deed and had it recorded; this vested title in Savacool; he had no directions to have the deed made to plaintiff, but, granting that it was his duty to have it so made, plaintiff has lost nothing by such omission of duty, for he has acquired title by

a conveyance from Savacool. We discover nothing in the record that induces the belief that defendant's acts in having the deeds made to Savacool, and in refusing or failing to have Savacool's first quit-claim deed recorded, were for the purpose of defrauding plaintiff. If we should attempt to surmise defendant's intentions in these acts, admitting he had knowledge of plaintiff's rights, we would infer that he was prompted by a desire to enforce the payment of the fees due him ; but, however this may be, certain it is, his acts have not prejudiced plaintiff. Plaintiff acquired the title of the land and then defendant's duties and relation as an attorney ceased. *McLain* v. *Watkins*, 16 Ill. 24. It was not his duty to pay taxes or to protect the land from tax sales. He had no duty as an attorney to discharge after the title was vested in plaintiff, unless it was to deliver to him the sheriff's deed. But his fees had not been paid and he could, for that reason, lawfully retain the instrument. This duty, however, had no connection with the land and could not, as to it, create, between the parties, the relation of client and attorney. Defendant purchased the land at tax sale about five years after the sheriff's deed was executed. Certainly, the plaintiff having refused to pay the attorney's fees, thereby excusing defendant from delivering the sheriff's deed, cannot claim that, during this long period, defendant was his attorney as to the land, on the ground of his failure to deliver the deed. If there were no fiduciary relations existing between the parties touching the land defendant was free to purchase it at the tax sale.

II. We are unable to arrive at the conclusion that any act of defendant tended to prevent plaintiff paying the taxes, or that he was misled or deceived thereby, and for that reason failed to pay the taxes. He knew that the lands had been sold upon the judgment ; he knew or ought to have known their proper description for he had, during a considerable time, the certificate of sale in his

possession, and the records of the court and county were always open to him. It does not appear that he ever applied to defendant for a description of the lands, or at any time made an effort to pay the taxes. His agent or attorney, it is true, testifies that he made some efforts in that direction, but they were feeble and ill-directed indeed. If he were deceived at all it was not by defendant but by the clerk of the court to whom he applied for information. If he had acted upon the knowledge possessed by his principal, or even with moderate diligence, applying to the proper source for information, he would have been informed that a deed for the lands had been executed and their proper description. He would have had no difficulty in discharging the land of taxes.

III. It is claimed by plaintiff that he was not under obligation to pay defendant's attorney fees for the reason that he had not assumed to do so, and because they were exorbitant, and the suit in which the charges were made had been mismanaged. In the first place, the evidence is that he did, in the purchase of the claim, agree with Savacool to pay defendant's charges; in the second place, Savacool could not transfer the claim so as to defeat defendant's proper lien upon the papers in his hands pertaining to the suit, or his duties as attorney in the matter. We discover nothing in the evidence authorizing the conclusion that defendant's charges were unreasonable, or that he had improperly managed the suit on the mortgage. Such being the facts and the law, the refusal of defendant, in the first instance, to deliver the certificate of sale, and afterward to send plaintiff the deed, is justifiable, and cannot be considered a breach of professional duty. If plaintiff has suffered from want of knowledge of the description of the land, resulting from the fact that the deed was not in his possession, his own fault has caused his misfortune. He cannot charge defendant with it. His successful attempt in avoiding the payment of defend-

ant's attorney fees cannot command especial sympathy for the misfortune resulting in a tax deed upon his land.

In our opinion, the decree of the district court dismissing plaintiff's petition is sustained by the law and the facts of the case.

Affirmed.