## LOUDEN *v.* MARTINDALE.

1. EXECUTORS AND ADMINISTRATORS — ASSIGNMENT OF LAND CERTIFICATE.

   An administrator who has, under license from the probate court under 2 How. Stat. § 5347, sold, for the payment of the intestate's debts, a part-paid land certificate left by him, and his interest in the lands therein described, may, after confirmation of such sale, properly assign such certificate to the purchaser thereon, such assignment being necessary to meet the requirements of the land office.

2. ADMINISTRATOR'S SALE—HOMESTEAD.

   Children have an interest in land reserved by their mother as a homestead on a sale by her, as administratrix, of her husband's property to pay his debts, only so long as they remain minors, and continue to occupy the land so reserved.

3. SAME—BONA FIDE PURCHASER.

   The fact that an administratrix sells to her husband at public sale, for an amount much less than its actual value, land belonging to the estate, and the further fact that the husband, after the lapse of 18 months, deeds the property to his wife, do not, where all the proceedings to sell were full, fair, and open, invalidate the administratrix's sale, as being indirectly a sale to herself, so as to defeat the title of third parties claiming through a *bona fide* purchaser from the wife. MONTGOMERY, J., dissenting.

Appeal from Alpena; Kelley, J. Submitted January 29, 1896. Decided May 12, 1896.

Bill by James S. Louden and others against Martha Martindale and others to set aside an administratrix's sale. From a decree for complainants, defendants appeal. Reversed.

*Joseph Cavanagh* (*J. D. Turnbull*, of counsel), for complainants.

*Frank Emerick*, for defendants.

MOORE, J.   January 22, 1877, John Louden, a resident of Alpena county, died, leaving a widow, Sarah A. Louden, and four children, aged respectively: James S. Louden, 15 years; Andrew B. Louden, 9 years; John L. Louden, 7 years; Sarah A. Louden (now Foster), aged 10 months.   These four children are the complainants.

February 5, 1877, the widow petitioned to be made administratrix of the estate, and was appointed administratrix February 28, 1877, and gave a bond which was approved by the judge of probate.   Afterwards debts were allowed against the estate, to the amount of $2,400. Appraisers were appointed.   The following property was left by the deceased: Lots 1 and 2 in section 33, township of Long Rapids, containing 65¾ acres, valued at $1,015; lots 3 and 4, same section, 72 acres, valued at $730; 120 acres valued at $600; personal property valued at $212.85. October 15, 1877, the administratrix petitioned for a license to sell the real estate to pay the debts, which order was properly published and posted; and on November 26, 1877, a license to sell the real estate was made by the court, and the administratrix gave the bond required by the court, and took the oath before sale in the usual form.   The notice of sale was given for January 26, 1878, and proof of publishing and posting of this notice was duly made.

Before the sale, the administratrix married Patrick Burns.   She had also had surveyed by the county surveyor, and selected as a homestead for herself and minor children of the deceased, the premises described in the bill of complaint.   The lands were advertised for sale "subject to the homestead rights of the widow and children of said deceased therein."   January 26, 1878, she made a report of sale as administratrix, under the name of Sarah A. Louden Burns, and reported that, in pursuance of the license to sell, she had given a bond, and had complied with the other requirements of law, and had also given proper legal notice of said sale, and published and posted the same, and annexed the affidavits of the publisher and

the person posting the same; that at said sale she sold at public auction a part of said real estate, namely, the homestead, consisting of 40 acres of land, as selected by the widow of said John Louden for herself and minor children of said deceased (describing it), to Patrick Burns, for the sum of five dollars; that the sale was kept open for two hours; that several persons were present; that she offered the other parcels of land for sale, but, as there were no bidders, the further sale was postponed. January 26, 1878, this sale was confirmed, and the administratrix ordered to make conveyance to Burns, which was done. January 28, 1878 (the date to which the sale was postponed), the administratrix sold the balance of the said real estate as follows: Lots 1 and 2, excepting a strip 13 rods wide and 48 rods long, off the west side of lot 2, which went into the homestead, to Albert Pack and Benjamin R. Young, for $238. What was left of lots 3 and 4 after taking out the homestead was sold to Pack and Young for $65, and the 120 acres was sold to Albert Pack for $1. On the same day the sale was confirmed, and the conveyances made.

After the death of her husband, Mrs. Louden continued to reside in the dwelling house of the deceased, situated upon the land selected by her as a homestead, and kept complainants with her, as an unbroken family. This continued after her marriage with Burns, and his purchase of the land, until it was sold by Burns and wife to Mrs. Brown (then named Naylor), the mother of defendants, on August 25, 1882. July 3, 1879, Patrick Burns deeded this land to his wife, Sarah A. Burns, the mother of the complainants. This deed was recorded October 16, 1879.

The title of Mr. Louden was not an absolute fee simple to lots 3 and 4, but he held them under a purchase from the State as partly-paid swamp lands. He paid $23 down, leaving $67.97 unpaid. January 28, 1878, Mrs. Burns, as administratrix, assigned this certificate, so far as it covered the lands in controversy, to Patrick

Burns, and on the same day assigned the balance of the certificate to Pack and Young, they having purchased the remainder of lots 3 and 4. May 20, 1882, Pack and Young assigned their interest in said certificate to Burns, who then paid the State the money unpaid on said purchase, and filed with the secretary of state his certificate, with the assignment and certified copies of the proceedings in probate court. July 13, 1882, the State issued a patent for lots 3 and 4 to Burns.

August 25, 1882, Burns and wife, for $1,200 in cash, deeded the premises in dispute, by a full warranty deed, to Eliza N. Naylor, who at once moved on the land, and lived there undisturbed until her death, in February, 1893, —a period of nearly 11 years. This Mrs. Naylor was a widow, previously named Brown. She was the mother and grandmother of the defendants in this proceeding. After her purchase of this land she married one Jay Brown, a witness in this proceeding. After Mr. and Mrs. Burns sold the land, in 1882, they and the younger children removed to Alpena.

The complainants filed this bill, claiming that the proceedings to sell the land were void, that the equitable title remained with the ¦complainants, and asked that the legal title held by the defendants be decreed to be in the complainants. The relief asked was granted by the learned circuit judge, and the case was brought here by appeal.

It is claimed that the complainants are entitled to the decree which was rendered—*First*, because the premises in question was their homestead; *second*, because they are the equitable owners and have the equitable title to the lands described in the bill of complaint. It is claimed that, inasmuch as the title in fee was not in Mr. Louden in his lifetime, but the land was held by a partly-paid certificate, Mrs. Louden, as administratrix, could not make an assignment of this certificate which would convey any title. The record discloses that she not only assigned the certificate in question to Mr. Burns, but that she also en-

deavored to sell the land in question, as real estate, after having petitioned the probate court for leave to do so.

Section 5347, 2 How. Stat., provides that—

"Whenever any purchaser or assignee of a purchaser shall die or shall have died before the issuing of a patent for the lands described in any such certificate, his executor or administrator may sell such certificate, and all the right, title, and interest which the deceased had in the lands therein described, for the payment of debts, upon obtaining license therefor, and proceeding in the same manner, as near as may be, as is provided by law for the sale of real estate by executors and administrators for the payment of debts."

This would seem to authorize the sale of the land described in such certificate as real estate, and it is claimed on the part of the defendants that the land was in fact sold as real estate by the direction of the probate court, and that the sale was confirmed; that the assignment made by Mrs. Louden, as administratrix, of the certificate, was simply to comply with the requirements of the land department, and enable Mr. Burns to get a deed; and it seems to us that this contention has a good deal of force.

So far as we have been able to discover in this record, the only way in which the homestead had been set aside as such was by the action of Mrs. Louden after she had filed a petition for leave to sell the real estate, and when she procured the same to be surveyed by the county surveyor. When she advertised the lands for sale, she advertised them for sale "subject to the homestead rights of the widow and children of said deceased therein." After the sale, she made a report and a deed describing the land sold as a "homestead consisting of 40 acres of land, as selected by the widow of said John Louden, for herself and minor children of said deceased, as surveyed and set off by Thomas McGinn;" describing the same land a description of which is in the bill of complaint. This sale was made as described above, subject to the interest that she and the minor children of said deceased

had in the land as a homestead.   Are these complainants in a condition now to attack this proceeding? They are all of age, excepting Mrs. Foster, who is married and living with her husband in a home of her own.   Had the mother of these complainants continued to live upon the land, none of them would be entitled to any interest therein as a homestead, unless they in fact occupied it with her, or desired to occupy it, during their minority. She and they having left it long ago, and all of them having attained their majority, have they an interest which they can enforce in this proceeding?   In the case of *Drake* v. *Kinsell*, 38 Mich. 232, it is stated:

"The homestead right presents the last question for our consideration.   The land is exempted only while it is occupied as a homestead by the widow and minor children.   Subject to the homestead right, therefore, the lands are assets, when needed for the payment of demands against the estate.   In this case the widow became the purchaser, and when she sold and left the land, if she did so,—as we must infer from this record that she did,—we do not see how any one was in position to raise the question of a homestead.   We are not informed when the children came of age, but it clearly appears they were so when this suit was brought, and that is all it is important for us to know on that subject."

It was held in the case of *Robinson* v. *Baker*, 47 Mich. 619, that the constitutional and statutory exemption of a homestead from forced sale for the satisfaction of the debts of the owner, and from being conveyed or mortgaged by the owner without the consent of his wife, and which extends the protection for the benefit of the widow and minor children after the owner's death, does not preclude proceedings for partition, as between the heirs at law or their assignees.   In *Dei* v. *Habel*, 41 Mich. 88, it was held that a widow may deprive herself of her homestead rights by marrying again; and in the case of *Griffin* v. *Johnson*, 37 Mich. 87, that she may do so by uniting with the administrator in a mortgage to pay the debts of her deceased husband.   In the case of

*Showers* v. *Robinson*, 43 Mich. 502, it was held that the claim of a widow to a homestead right, in behalf of herself and her children, does not bring in question the validity of an administrator's sale to pay debts of the intestate, since the sale must be deemed made subject to the homestead right; and the court did not determine the question whether or not the real estate may be sold during the occupancy by the widow and minor children as a homestead, and the discussion proceeds on the theory that the question is yet an open one. Justice COOLEY, after citing the case of *Drake* v. *Kinsell*, *supra*, makes use of the following language: " The validity of the sale was attacked, but it had been duly licensed by the probate court, and was therefore not void, and no party interested had appealed. The widow, after her purchase, had sold the land and removed from the premises, and it was not pretended that the homestead right existed afterwards." The court, in deciding *Drake* v. *Kinsell*, held that the sale could not be attacked collaterally. Mr. Justice COOLEY then proceeds to say:

"It was not decided in that case, nor was it necessary to decide, that the course adopted was the most suitable. It seems plain that the practice followed in Illinois and Ohio is more for the interest of all concerned; and, if an application for a sale subject to the homestead right should be contested, it is probable that some method would be found, not inconsistent with the statutes, of so dealing with the case as to protect at once the interests of the family and of the creditors. But, at most, a sale subject to the homestead right would be voidable on appeal. It would not be void."

We think it clear that if this decree is to stand, now that the children have attained their majority (excepting Mrs. Foster, who has a home elsewhere), it must stand upon other grounds than because the sale is void on the ground that the land was a homestead.

The other ground upon which it is claimed that this sale is void is that the administratrix sold it to her hus-

band, and that his conveyance to her shows conclusively, in the absence of any explanation, that it was in reality a sale to herself, and, under our statute, void; that there is no presumption of honesty in a transaction by which the title of a *cestui que trust* is divested, and invested in the trustee.   The record shows that Mr. Burns became the purchaser on January 26, 1878.   He did not convey until July 3, 1879.   We do not think the facts bring the case within the decision of *Winter* v. *Truax*, 87 Mich. 324, or *McKay* v. *Williams*, 67 Mich. 547.   It is true that the price paid by Mr. Burns for this 40 acres was very small, but it is also true that its appraised value was but $730, and that it was sold subject to the homestead rights of the widow and minor children, while the 120 acres in section 28, which was appraised at $600, and which was sold to Albert Pack, brought but $1, and the other land, which was inventoried at $1,015, brought at the administratrix's sale but $238.   The record discloses that these sales were open; that they had· been advertised; that the usual and legal advertisement had been published.

It is strongly urged that as the sale to Burns, and by him to Mrs. Louden, was fraudulent and void, Mrs. Naylor would get no better title than they had, and that she was not a *bona fide* purchaser.   The record does disclose that Mrs. Naylor lived near these premises, and knew them while they were occupied by Mr. Louden and his family, and there is some testimony on the part of Jay Brown that he had some talk with her about the purchase before she made it.   It is very evident, however, that Mr. Brown's testimony is not entitled to very much credit.   It appears that he himself, after he claimed to have had the talk with Mrs. Naylor, loaned her $300, and took a mortgage on the same land.   It also appears from his testimony that Mrs. Naylor consulted Mr. Clayberg, a reputable attorney, before making the purchase, and that, after having done so, she paid $1,200 for this land, and took a deed of it.   Taking the testimony contained in the record

as a whole, it cannot be said that this was not the full value of the land at that time. This purchase was followed by Mrs. Naylor's occupancy of the land for 11 years, until her death. Four years had elapsed after the sale by the administratrix before this purchase was made. The fact that Mrs. Naylor advised with counsel, and paid the full value of this land, in cash, for it, together with the surrounding circumstances of the case, satisfies us of her good faith in buying these premises. In many respects this case is analogous to the case of *Otis* v. *Kennedy*, 107 Mich. 312, where there is a very full review of the cases, and a discussion of the principles that should control this phase of the case. It will not be necessary to repeat them here.

After a careful inspection of the record, we do not think the complainants have made such a case as to entitle them to the relief prayed for. The decree of the court below is reversed, and one entered dismissing the bill of complaint, with costs.

LONG, C. J., GRANT and HOOKER, JJ., concurred with MOORE, J.

MONTGOMERY, J. (*dissenting*). I am not able to agree with the conclusion reached by my brethren. In my judgment, the sale by Mrs. Burns, as administratrix, to her husband, by which, if authorized, at least an inchoate right of dower would vest in her, was invalid.