## CHARLES et al. v. ROXANA PETROLEUM CORPORATION. *

(Circuit Court of Appeals, Eighth Circuit. August 10, 1922.)

No. 5973.

1. **Corporations ⬉590(I)—Company taking over another's assets and liabilities held bound by the other's notice of defects in oil lease.**

Where plaintiff took over the assets and liabilities of another company, and was practically the same company, except that it was operating on an enlarged scale and with a foreign charter, it was bound by knowledge or notice on the part of its predecessor of a defect in the title to an oil lease so taken over.

2. **Mines and minerals ⬉74—Additional payment provided for in oil lease not part of consideration for assignment, so as to deny assignee rights of innocent purchaser.**

Where plaintiff paid $7,750 in cash for an assignment of an oil lease, which provided that the grantors were to be paid an additional sum out of the oil and gas produced after reimbursement for developing and operating expenses, this additional payment to be made to the grantors was not part of the consideration for the assignment, so as to deny the assignee the rights of an innocent purchaser for value, because such payment had not been made.

3. **Notice ⬉6—Actual notice of circumstances essential to put one on inquiry.**

Under Rev. Laws Okl. 1910, § 2926, providing that every person having actual notice of circumstances sufficient to put a prudent man on inquiry as to a particular fact, and omitting to make inquiry with reasonable diligence, is deemed to have constructive notice of the fact, one is not put on inquiry by constructive notice contained in a record, but only by actual notice of circumstances sufficient to do so.

4. **Records ⬉19—Recorded deed is notice of what appears on its face.**

Under Rev. Laws Okl. 1910, § 1155, a recorded deed is constructive notice of what appears on its face.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied November 27, 1922.

5. **Notice** ⬁3, 5—**"Constructive notice" and "implied notice" distinguished.**

"Constructive notice" is a presumption of law, making it impossible for one to deny the matter concerning which notice is given, while "implied notice" is a presumption of fact, relating to what one can learn by reasonable inquiry, and arises from actual notice of circumstances, and not from constructive notice.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Constructive Notice; Implied Notice.]

6. **Guardian and ward** ⬁108—**Assignee of oil lease, given one acting as attorney for guardian in sale of land six years before, not chargeable with notice of fraud.**

Records showing a sale of land by a guardian for more than its appraised value under order of court to one who shortly thereafter conveyed an undivided one-half interest to another person of the same surname, and quitclaimed the other undivided one-half interest to one having the same surname as the guardian's attorney, and that such grantees, more than six years after the sale, gave the attorney an oil and gas lease, did not give an assignee of the lease actual notice of circumstances sufficient to put him on inquiry, or charge him with constructive or implied notice of fraud in connection with the sale, under Rev. Laws Okl. 1910, §§ 1155, 2926.

7. **Guardian and ward** ⬁108—**Guardian's deed puts one on inquiry as to power of court to order sale.**

A guardian's deed in itself puts one on inquiry as to the authority and power of the court to order the sale.

8. **Notice** ⬁6—**Circumstances arousing suspicion not sufficient to put on inquiry.**

Circumstances which might arouse a suspicion are not enough to require investigation by a prudent person to discover a fraud, and the notice must be such that it would be fad faith for him not to make the investigation.

9. **Attorney and client** ⬁125—**Attorney's purchase of client's property not void, but voidable, if advantage taken.**

The mere fact that an attorney purchases at a sale property of his client, or property previously belonging to his clients, does not make the sale void under the law of Oklahoma, but voidable, if any advantage, however slight, has been taken of the clients.

10. **Notice** ⬁6—**Test is what prudent man should do, and not what extremely cautious person would do.**

The test as to notice is not what an extremely cautious man might do, because of the circumstances of which he has notice, but what a prudent man should do.

11. **Fraud** ⬁58(1)—**Must be clearly shown.**

Fraud is not presumed, and must be clearly shown.

12. **Guardian and ward** ⬁107—**Finding that law complied with as to payment on sale of ward's land cannot be questioned on collateral attack.**

Where the law required payment in cash by one buying land at a guardian's sale, the finding of the court ordering the sale that the law was complied with cannot be questioned on collateral attack.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit by the Roxana Petroleum Corporation against Sophia Charles and others. From a decree for plaintiff, defendants appeal. Affirmed.

Robert F. Blair, of Tulsa, Okl., for appellants.

Robert W. Thomas, of Coweta, Okl., guardian ad litem.

Truman P. Young, of St. Louis, Mo. (Koerner, Fahey & Young, of St. Louis, Mo., on the brief), for appellee.

⬁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

KENYON, Circuit Judge. The facts of this case are somewhat complicated. Appellee brought this action in the United States District Court for the Eastern District of Oklahoma to quiet title to a certain oil and gas lease covering properties that at one time had been the allotment of appellants Sophia Charles and Ellis Buffington Charles, minor Creek Indians. The allotments of appellants were sold as a result of application, by their guardian, one Nero Charles, to the county court of Wagoner county, state of Oklahoma. One F. D. Prentice was attorney in said proceedings, and his name appears in the court record as such attorney. The land was sold to one P. S. Johnson on January 6, 1912. On February 21, 1911, the land had been appraised by three disinterested persons appointed by the court, and they placed a value of $480 upon one tract and $450 upon the other. The court sales were made for more than the appraised valuation. The land was rough and rocky, with scrub oak timber on it. Prior to the time of sale an order had been entered by the court authorizing a lease for oil and gas to one J. H. Yeager, who was the stenographer of said attorney, Prentice, and said lease was made and subsequently assigned to P. S. Johnson, who released the same on May 10, 1915; the release being filed for record on May 12, 1915. May 7, 1912, he conveyed a half interest in the land by quitclaim deed to J. B. Prentice, who was a daughter of said attorney, F. D. Prentice, and also on March 7, 1914, he conveyed an undivided one-half interest in the land in question to J. White Johnson, his father. Some four years later, viz. May 20, 1918, J. White Johnson and J. B. Prentice executed an oil and gas lease to F. D. Prentice, who had been attorney for the minors and guardian in the original sale of the land under the order of the court. F. D. Prentice sold and assigned this lease on May 20, 1918, to the Roxana Petroleum Company of Oklahoma for $7,750 cash, which was paid. They, in turn, on March 15, 1920, assigned the same to the Roxana Petroleum Corporation. The affairs of the Roxana Petroleum Company had been taken over by the Roxana Petroleum Corporation in October, 1919, and said oil and gas lease became the property of that corporation, and it actually entered on the premises in October, 1919.

On March 17, 1920, appellants filed suit in the district court of Creek county, Okl., against F. D. Prentice, J. B. Prentice, and P. S. Johnson, to cancel and set aside the deeds of conveyance on the ground of fraud and collusion. Appellee was not a party to that suit. On May 10, 1920, appellant Ellis Buffington Charles withdrew from said suit and filed a separate suit in his own behalf. An amended petition was filed on behalf of Sophia Charles. In this amended petition, and in the suit brought on the same day in behalf of Ellis Buffington Charles, the Roxana Petroleum Company of Oklahoma was made a party defendant.

The Roxana Petroleum Company filed in said district court its answer, pleading that it had bought said lease from F. D. Prentice in

good faith, for valuable consideration, in reliance upon the record title, and that it had assigned on October 10, 1919, the said lease to the Roxana Petroleum Corporation and had no further interest in it. Said lease, according to the record, was formally assigned on the 15th day of March, 1920, two days before suit was commenced in the state court, as before referred to, and said assignment was filed for record in the recorder's office in Creek county, Okl., on May 6, 1920. It is admitted that counsel for the Roxana Petroleum Corporation knew of the filing of said suit shortly after it was filed on March 17, 1920. This suit was filed May 20, 1920.

Appellants, in their answer to the amended bill of appellee, plead that before the present action was commenced they had begun their action in the state court to cancel the deeds and the lease, that said state court had acquired prior jurisdiction, and that the identical claim which appellee presented in its amended bill was involved in the suit pending and undetermined in that court. Appellee was not a party to the suit in the state court, and the point suggested is not strongly urged in the argument here. It should also be stated that appellants, as a part of their pleading, counterclaimed and asked as relief that the oil lease be canceled, that possession of their allotments be delivered to them, and that they have judgment against appellee for rents and profits. Under these general issues the case was tried, and a decree rendered quieting title in appellee as to said lease.

Counsel for minor appellants urge two propositions: First, that the attorney employed to represent the minor Indians in the administration and sale of their allotments in the probate court of Oklahoma was disqualified from directly or indirectly having, acquiring, holding, or conveying any part of their allotments or any interest therein; second, that the Roxana Petroleum Company, assignor of appellee herein, is not a bona fide purchaser of such leasehold interest without notice, for the reason that it affirmatively appeared, on the face of the probate record and the chain of title to said leasehold interest, that lessee was attorney for and had represented the guardian of these minors in the application for sale of their allotments; further, that said company could not be a bona fide purchaser for value, for the reason that it paid part only of the purchase price for said leasehold interest. These two propositions present the real questions in this case. We consider the solution of the second one decisive, and therefore pass first to its consideration.

[1] Appellee's title is derived from the Roxana Petroleum Company. Appellee in October, 1919, took over the assets and liabilities of said Petroleum Company, and became the owner of the lease in question. It is practically the same company, except it is operating on an enlarged scale and with a foreign charter. It was bound by knowledge or notice on the part of the Roxana Petroleum Company, and we shall so view the matter in the discussion of this case. Notice to the Roxana Petroleum Company of defects in title would be notice to appellee. Smith v. Ayer, 101 U. S. 320, 25 L. Ed. 955. Appellee claims that it was an innocent purchaser in good faith, without notice of any fraud, and for valuable consideration, and therefore its

rights are protected. Appellee secured the opinion of reputable lawyers as to the legality of the title to the leasehold. It is quite generally held that the action of parties in seeking legal opinion of reputable lawyers on the question of title is strong evidence of good faith. Grundies v. Reid, 107 Ill. 304; Louden v. Martindale, 109 Mich. 235, 67 N. W. 133. We think there is nothing in this case to indicate a lack of good faith upon the part of appellee.

[2] Was there a valuable consideration paid for the leasehold? Appellants claim that the Roxana Petroleum Company was to pay $15,000, that they paid only $7,750, and that, not having paid the full consideration, it cannot hold under the doctrine of an innocent purchaser for value. It is apparent that the obligation was to pay $7,750, which was paid in cash. There was a provision in the lease as follows:

"Grantors are to be paid out of the oil and gas produced an additional sum of seven thousand seven hundred and fifty ($7,750.00) dollars, or such part thereof as may be produced, after the second party shall have been reimbursed for its developing and operating cost out of its share of the oil and gas produced from the premises."

This, however, was not a part of the consideration. It was not an obligation due to F. D. Prentice, but to J. W. Johnson and J. B. Prentice. We think there is nothing in the proposition that the full consideration had not been paid. The case, therefore, narrows itself to the question of notice.

Probably few subjects in the law have been so prolific of litigation as that of notice affecting the rights of third parties. Oklahoma has by statute sought to make certain the doctrine of notice actual and constructive. The Revised Laws of Oklahoma of 1910 provide as follows:

"2923. Notice.—Notice is either actual or constructive.
"2924. Actual Notice.—Actual notice consists in express information of a fact.
"2925. Constructive Notice.—Constructive notice is notice imputed by the law to a person not having actual notice.
"2926. Presumption of Constructive Notice.—Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

[3] It is to be noted that this section relates to putting those on inquiry who have actual notice of circumstances, etc.; that, before being charged with constructive notice of what inquiry might develop, the party must have express information of circumstances. He is not put upon inquiry by constructive notice contained in a record.

South Dakota has a similar statute to this, and that statute was before the Supreme Court of the United States in Shauer v. Alterton, 151 U. S. 607, 14 Sup. Ct. 442, 38 L. Ed. 286. It is interesting to note the view of the Supreme Court. The question involved there was a question with relation to the defrauding of creditors and the effect of a sale. The court assumes for the purposes of that case the instruction of the Dakota court upon the question of intent in the sale

was correct. On page 621 of 151 U. S., page 446 of 14 Sup. Ct. (38 L. Ed. 286), the court says:

"It was liberally construed. so as to protect bona fide purchasers for value. Assuming, for the purpose of this case, that this interpretation was correct, we are of opinion that, while the plaintiff was not bound to act upon mere suspicion as to the intent with which his brother made the sale in question, if he had knowledge or actual notice of circumstances sufficient to put him, as a prudent man, upon inquiry as to whether his brother intended to delay or defraud his creditors, and he omitted to make such inquiry with reasonable diligence, he should have been deemed to have notice of such fact, and, therefore, such notice as would invalidate the sale to him, if such sale was in fact made with the intent upon the part of the vendor to delay or defraud other creditors."

The Supreme Court in this case referred to the language of the Supreme Court of Dakota in Gress v. Evans, 1 Dak. 387, 46 N. W. 1132. The Supreme Court of Dakota said in that case, referring to the question of notice:

"Actual notice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which should put a prudent man upon inquiry, impeaches the good faith of the subsequent purchaser. There should be proof of actual notice of prior title, or prior equities, or circumstances tending to prove such prior rights, which affect the conscience of the subsequent purchaser. Actual notice, of itself, impeaches the subsequent conveyance. Proof of circumstances, short of actual notice, which should put a prudent man upon inquiry, authorizes the court, or jury, to infer and find actual notice; or, to express it exactly, good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious. And notice is either actual or constructive."

And the Supreme Court said:

"The statute of Dakota, however liberally construed in favor of purchasers from a fraudulent debtor, will not permit him to enjoy, to the exclusion of other creditors, the fruits of his purchase, when the sale was made with the intent to delay or defraud other creditors, if he had, at the time, actual notice of such intent or knowledge of such circumstances or facts as were sufficient to put a prudent person upon an inquiry that would have disclosed the existence of such intent upon the part of the vendor."

These views merely state the rules of common honesty and fair dealing in transactions between parties.

[4, 5] Section 1155 of the Oklahoma statutes before referred to, should be considered in connection with section 2926, as it provides:

"Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the registrar of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors."

A recorded deed is therefore constructive notice under this section of the contents thereof—that is, of what appears on the face of the instrument. There is considerable misuse of the term "constructive notice." Constructive notice is a presumption of law. Implied notice is a presumption of fact. Constructive notice makes it impossible for the person to deny the matter concerning which notice is given. Implied notice relates to what one can learn by reasonable inquiry.

It arises from actual notice of circumstances, and not from constructive notice. In Townsend v. Little and Others, 109 U. S. 504, 511, 3 Sup. Ct. 357, 361 (27 L. Ed. 1012), it is said:

"Constructive notice is defined to be in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted."

The Oklahoma statute makes constructive notice under certain circumstances and conditions take the place of what is usually termed implied notice. There is no constructive notice, however, under the Oklahoma statute, unless there is actual notice of circumstances sufficient to put a prudent man on inquiry. In Cooper v. Flesner et al., 24 Okl. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29, it was said:

"The language of our statute, it will be observed in this connection, is that the party having actual notice of circumstances, etc., is deemed to have constructive notice of the fact itself."

Redfield on Notice (11th Ed.) § 410-2, discusses the term "constructive notice" as follows:

"The term 'constructive notice' is 'applied indiscriminately to such notice as is not susceptible of being explained or rebutted and to that which may be. It seems more appropriate to the former kind of notice. It will then include notice by the registry and notice by the lis pendens. But such notice as depends upon possession, upon knowledge of an agent, upon facts to put one upon inquiry, and some other similar matters, although often called constructive notice, is rather implied notice or presumptive notice, subject to be rebutted or explained.' Constructive notice is thus a conclusive presumption or a presumption of law, while implied notice is a mere presumption of fact."

While the general doctrines of notice, as enunciated in the decisions of most of the courts, do not go as far as the Oklahoma statute on the subject of constructive notice, yet the doctrine of implied notice from knowledge of facts sufficient to put a reasonably prudent man on inquiry in its results reaches the same end and accomplishes practically the same purpose. We refer to some cases on this subject. In Wood v. Carpenter, 101 U. S. 135, 141 (25 L. Ed. 807), the court quotes with approval the language of Kennedy v. Greene, 3 Myl. & K. 722, as follows:

"Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it."

This doctrine charges a person with notice of everything that he could have learned by inquiry where there is sufficient notice to put him on guard and excite attention. True, it does not make such notice constructive; but, if a party actually has notice, the only difference between constructive or implied notice would be that one could be rebutted and the other could not. The same doctrine is announced in Weniger v. Success Mining Co. et al. (this circuit) 227 Fed. 548, 557, 142 C. C. A. 180, 189. Referring to the question of notice the court says:

"For ignorance which is the effect of inexcusable negligence is no excuse for laches, and knowledge of facts and circumstances which would put a person of

ordinary prudence and diligence on inquiry is, in the eyes of the law, equivalent to a knowledge of all the facts which a reasonably diligent inquiry would disclose."

The rule is well stated in 23 Am. & Eng. Enc. of Law (2d Ed.) 495, as follows:

"It is a well-settled rule that, where a purchaser has knowledge or information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the inquiry, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others affecting the property in question, the purchaser will be held chargeable with knowledge thereof, and will not be heard to say that he did not actually know of them. In other words, knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed."

Mr. Pomeroy, in his work on Equity Jurisprudence (volume 2, par. 600), says:

"What facts are sufficient to put the party upon an inquiry, so that he may thereby be charged with the actual notice inferred from circumstantial evidence? Among the facts to which, as evidence, such force has been attributed are close relationship, personal intimacy, or business connections existing between the purchaser and the party with whom he is dealing, or between him and the holder of the adverse claim; great inadequacy of the price, which might arouse the purchaser's suspicion, and put him upon inquiry as to the reasons for selling the property at less than its apparent value; the sight or knowledge of visible material objects upon or connected with the subject-matter, which may reasonably suggest the existence of some easement or other similar right."

The rule is laid down in Coder v. McPherson, 152 Fed. 951, 953, 82 C. C. A. 99, 101, by this court as follows:

"Notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would disclose."

The California statutes on this subject are similar to the Oklahoma statutes, and in Prouty v. Devin, 118 Cal. 258, 50 Pac. 380, the court discusses this question and says:

"The question for determination is whether there was actual notice upon the part of Bates of circumstances sufficient to put him as a prudent man upon inquiry. If so, then, in law he is chargeable with constructive notice and knowledge of the fact," etc.

In Gaines v. Saunders, 50 Ark. 322, 7 S. W. 301, the rule laid down by the Supreme Court of Arkansas has a measure of clearness and simplicity:

"All persons acquiring an interest in lands 'take with constructive notice of whatever appears in the conveyances constituting their chain of title'; and whatever appears in such conveyances sufficient to put a prudent man on inquiry, 'which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that they are about to acquire, it is their duty to make inquiry, and if they do not make it' the law 'will charge them with the actual notice they would have received if they had made it.'"

The court says in Daniel v. Tolon, 53 Okl. 666, 684, 157 Pac. 756, 761 (4 A. L. R. 704):

"It is a general rule, independent of statute, that where such facts or circumstances are known to a person in relation to a matter in which he is

interested as are sufficient to make it his duty as an honest and prudent man to inquire concerning the rights of other persons in the same matter, and the course of inquiry thus suggested would, if followed with due diligence, lead to a discovery of rights in conflict with his own, he will be held chargeable with notice of all that he might thus have discovered, and will not be heard to say that he did not actually know of the fact or claim in question. In such cases means of knowledge, with a duty of using them, are deemed equivalent to knowledge itself, and passive good faith will not serve to excuse willful ignorance."

In Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 437, 12 Sup. Ct. 239, 246 (35 L. Ed. 1063), the court said:

"Apart from this we hold appellant chargeable with notice. The rule is thus stated by the Virginia Court of Appeals, in Burwell's Adm'rs v. Fauber, 21 Grat. 446, 463: 'Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. "Caveat emptor" is one of the best settled maxims of the law, and applies exclusively to a purchaser. He must take care, and make due inquiries, or he may not be a bona fide purchaser. He is 'bound, not only by actual but also by constructive notice, which is the same in its effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice.' "

[6, 7] Testing the present controversy in the light of the principles of these cases and also the Oklahoma statute, what is the result? When the Roxana Petroleum Company, assignors of appellee, took an assignment of the lease for the oil and gas rights, what was there on the records to excite attention and put one on guard? What actual notice was there of circumstances sufficient to put a prudent man on inquiry? What did the record show? The prudent man, examining the records to ascertain the situation of the title, would have found that the court of Creek county had granted an application for a 10-year oil and gas lease upon appellants' land to one J. H. Yeager; that the application and order were for a 5-year lease, but that the lease in fact was made for 10 years. He would have found proceedings in the court of that county in January, 1912, authorizing the sale of appellants' allotment (we refer in all of this to minor appellants, Sophia Charles and Ellis Buffington Charles). He would have found two guardian's deeds, made by Nero Charles, guardian of Sophia and Ellis Buffington Charles, to P. S. Johnson. These being guardian's deeds, as a prudent man he would examine the records to find out whether all the requisites of law were complied with, and whether the court had jurisdiction and authority to order and confirm the sale. He would be under greater obligation to inquire and investigate as to the guardian's deed than as to an ordinary warranty deed. A guardian's deed in itself puts one on inquiry as to the authority and power of the court to order it.

He would have discovered in further investigation that proper application had been made; that the lands had been appraised by three disinterested appraisers, and had been sold under the order of the court for more than the appraisement; and that the court had confirmed the sale. He would have discovered that all of the legal re-

quirements were complied with, and he would have found nothing to indicate any overreaching or any fraud, as now claimed, in the transfer to Johnson of the minors' shares. He would, however, in such examination, probably have discovered that one F. D. Prentice was acting for the guardian in the proceedings. This fact appears in the order of the court confirming the sale of the real estate of both minors by the guardian. He would have found, also, that the order confirming both sales recited that the same were made after due notice, as prescribed by the order of sale; that the purchaser was the highest bidder therefor, and said sum was the highest sum bid; that said sale was legally made and fairly conducted; and that the sum for which sold was not disproportionate to the value of the property. Certainly there would have been nothing there to have aroused even a suspicion of the most prudent investigator. Further investigating, it would have been disclosed that on the 7th day of March, 1914, P. S. Johnson made two deeds to J. White Johnson, conveying an undivided one-half interest to the land in question, which deeds were filed for record March 16, 1914.

The record would also have notified him that on the 7th day of May—the date of the year being left blank in the deed, but appearing to have been filed June 12, 1912, so it was a fair inference that it was May, 1912—a quitclaim deed was made by P. S. Johnson to J. B. Prentice of an undivided one-half of both allotments. The record would further disclose that on the 20th day of May, 1918, J. White Johnson and J. B. Prentice, grantees of P. S. Johnson, made to F. D. Prentice an oil and gas lease, which covered the identical premises formerly owned by the minor appellants. The fact would appear on the record that the vendee at the guardian's sale had, four months after his purchase, made a quitclaim deed to a party with the same surname as the attorney for the guardian in the action to sell the minors' real estate. There was nothing in the record, however, to show that J. B. Prentice was the daughter of the attorney, F. D. Prentice, nor that J. White Johnson was the father of P. S. Johnson. The incidents of the court proceedings showing the transfer to Johnson for more than the appraised valuation, the confirmation of the sale by the court, taken in connection with the deeds by Johnson to J. B. Prentice and J. White Johnson, did not give notice of anything to raise suspicion in the mind of a prudent investigator, or put him on inquiry.

[8] Had the record shown that Johnson had sold an undivided one-half interest to his father and an undivided one-half interest to the daughter of the attorney who had charge of the proceedings for the sale of the minors' allotments, one might have wondered why the sale was made to the father and why the sale was made to the daughter of the attorney, and possibly have pursued an investigation to discover whether there was any fraud in the transaction, but those things did not appear in the record. A prudent man was not called on to enter the realm of imagination to discover fraud. Had the record shown that J. B. Prentice was a daughter of F. D. Prentice, it would have been no notice of fraud that would affect third parties. She

would have the right, were she not a party to a conspiracy to defraud, to purchase from said Johnson. It might, in connection with other circumstances, arouse a suspicion; but that is not enough to require investigation by a prudent person to discover a fraud. The subsequent purchaser must be charged with such notice that it would be bad faith for him not to make investigation. 39 Cyc. 1785; Tobey v. Kilbourne, 222 Fed. 760, 138 C. C. A. 308, Ann. Cas. 1918C, 470; U. S. v. Routt County Coal Co., 248 Fed. 485, 160 C. C. A. 495; Grundies v. Reid, 107 Ill. 304, 310; Wilson v. Wall, 73 U. S. (6 Wall.) 83, 18 L. Ed. 727.

The prudent man, making the examination, would further have discovered that on the 20th day of May, 1918, the records show a lease to have been made between J. White Johnson and J. B. Prentice jointly, as lessors, and F. D. Prentice, as lessee, for a consideration of $3,875, granting the premises in question for the purpose of mining and operating for oil and gas. Here was the first actual notice of a fact that might have aroused suspicion, namely, that F. D. Prentice secured an oil and gas lease from J. White Johnson and J. B. Prentice in May, 1918, and this in view of the other fact that the record showed F. D. Prentice to have been attorney for the guardian in the proceedings for the sale of the minor appellants' lands 6 years before.

Was this actual notice of circumstances sufficient to put a prudent man on inquiry as to any fraud of Prentice in securing the lease? Is the fact that an attorney, 6 years after the time of acting for certain clients in a transfer of their property, is shown by the record to have a lease covering the oil and gas rights in the same property taken from two parties, one of whom bears the same surname, sufficient to require a prudent man to investigate as to whether or not said attorney had been in a conspiracy to defraud his former clients? Did it give actual notice of circumstances sufficient to put him on inquiry as to a fraud, and to hold him to a constructive or an implied notice of such fraud? He knew from his investigation of the record that the sale to P. S. Johnson was regularly authorized by a court having jurisdiction of the matter; that Johnson bought the lands for more than the appraised value at public sale. There was nothing to show that Johnson was in any conspiracy to defraud; nothing to intimate that he had no right to transfer the property to whomsoever he might desire. There is left the bare fact to predicate notice of fraud that Prentice, owning a lease on the land, had years before been attorney for minor appellants, owners of the land, and that a party named Prentice had acquired an interest in the land. To hold this sufficient as actual notice to the purchaser, requiring him to make investigation on the question of fraud, is going beyond the doctrine, we think, of recorded decisions.

We consider this question somewhat in connection with the law affecting transactions between guardians and wards, and others in fiduciary relationship. Under section 6409, Revised Laws of Oklahoma 1910, it is provided:

"No executor or administrator must, directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale."

282 F.—63

Section 6565 of the Oklahoma Laws makes this statute applicable to guardians' sales. The law of Oklahoma, therefore, forbids an executor, administrator, or guardian to purchase property of the estate he represents, and such transaction is void. Under this statute it has been recently held by the Supreme Court of Oklahoma in the case of Brooks v. Tucker, 201 Pac. 643, that even where the lands of minors have been sold by the guardian in consummation of the fraudulent agreement between the guardian and the purchaser, that a bona fide purchaser of the grantee at such sale without notice of the fraudulent agreement will be protected, and that the remedy of the wards is an action against the guardian. This case shows the extent to which the Oklahoma courts have gone in protecting third parties. It has been held frequently that a subsequent purchaser from a guardian, executor, or administrator, who has purchased from the vendee at a judicial sale, is not chargeable with constructive notice of any fraud which the guardian, executor, or administrator may have practiced. Louden v. Martindale, 109 Mich. 235, 67 N. W. 133; Mumbach v. Nienhaus (Mo. Sup.) 219 S. W. 354.

If from the record it appeared that the guardian had purchased at a sale the land of his ward, it would be actual notice of circumstances sufficient to bind a purchaser with constructive notice of the invalidity of the sale. If the guardian had sold to a third party, and the third party had subsequently conveyed back to the guardian, the question would be: Was it an honest transaction, or was the sale to the third party merely a subterfuge, to assist the guardian in getting his ward's property? Was the sale to the third party and back to the guardian one and the same transaction? If it was, the facts appearing on the record would impart actual notice of circumstances that would bind, under the Oklahoma statute, a purchaser by constructive notice, or outside of said statute give to him implied notice of the invalidity of the deed. The following cases bear upon the question:

In Burton v. Compton, 50 Okl. 365, at page 371, 150 Pac. 1080, at page 1082, it was held that, where the guardian of the minor sold his ward's real estate to his own wife the deed was void under the statutes of Oklahoma. The court says:

"It is a well-established rule that one who purchases at a guardian's sale, or one who purchases from the vendee of a guardian's sale, must take notice, at his peril, of the authority of the guardian to make the sale."

The very important case of Burns v. Cooper et al., 140 Fed. 273, 277, 72 C. C. A. 25, 29, involves the question of notice, and arose out of a sale by a guardian of his ward's interest in land. The guardian's purpose was to secure his ward's estate, and, while the proceedings were regular, they were wanting in good faith. The court said:

"In fact, the pretended sale was one in form only, made by a trustee at his own sale to himself, in fraud of the rights of his cestuis que trustent. There is no principle better settled, or with better reason, than the one that courts of conscience have and will continue to condemn and avoid such sales, when timely challenged at the suit of one thus defrauded, or their successor in interest, and will refuse to uphold or enforce transactions of this character, unless the rights of innocent third parties have intervened, or some

positive enactment of statutory law withdrawing that protection afforded may be interposed."

In this case it will be noticed that the court uses the language, "unless the rights of innocent third parties have intervened."

In McParland v. Larkin, 155 Ill. 84, 39 N. E. 609, referring to a deed made by a ward, inexperienced and shortly after attaining her majority, the court said:

"It is not necessary, in such cases, that actual and intentional fraud be established. It is sufficient, when the parties sustained the relation of guardian and ward, that the former has gained some advantage by the transaction with his ward, to throw the burden of proving good faith and absence of influence, and of knowledge and free consent of the ward, upon the guardian."

In Bachelor v. Korb, 58 Neb. 122, 130, 131, 78 N. W. 485, 487 (76 Am. St. Rep. 70), it is said:

"But the defendants in error, though they may have paid a valuable consideration for this real estate, are not innocent purchasers of it. One who purchases real estate at a guardian's sale, or purchases from the vendee of that sale, must take notice at his peril of the authority of the guardian to make the sale. The doctrine of 'caveat emptor' applies to purchasers at guardians' sales. * * * There was enough upon the face of this record to have deterred any prudent man from investing his money in this property."

[9] These cases elucidate the general doctrine as to guardians and their relation to their wards' property. The law of Oklahoma apparently is more stringent as to transactions of executors, administrators, and guardians than as to those of attorneys. The mere fact that an attorney purchased at a sale in Oklahoma the property of his client would not make the sale void, but voidable, if any advantage, however slight, had been taken of his clients. In Harrison v. Murphey, 39 Okl. 548, 554, 135 Pac. 1137, 1140 (49 L. R. A. [N. S.] 1059), it is said:

"It cannot be the law that an attorney, in the absence of fraud or an abuse of confidence in some way, is forever debarred from acquiring property, honestly and in good faith, solely because it had formerly belonged to a person who at some time in the past had been his client."

It is held in a number of cases that a purchase by an attorney, in the absence of statute, is not void, although under suspicion, and easily avoided, if interests of client are shown to have suffered. Such is the general doctrine. Roger v. Whitham, 56 Wash. 190, 105 Pac. 628, 134 Am. St. Rep. 1105, 21 Ann. Cas. 272; Pac. R. R. Co. v. Ketchum, 101 U. S. 289, 25 L. Ed. 932; Hess v. Voss, 52 Ill. 472; The Ruby (D. C.) 38 Fed. 622; Grayson v. Weddle, 63 Mo. 523; Baker v. Davis, 35 Iowa, 184; Harrison v. Murphey, 39 Okl. 548, 135 Pac. 1137, 49 L. R. A. (N. S.) 1059; Comegys v. Emerick, 134 Ind. 148, 33 N. E. 899, 39 Am. St. Rep. 245.

It is not the law in Oklahoma that an attorney cannot at any time in the future buy property that might have belonged to his clients, but certain it is that the transaction must be clear and free from any suggestion of advantage taken of said clients. The mere fact, therefore, that Prentice acquired a leasehold interest in lands of minor

appellants 6 years after the time he had been attorney in the proceedings to sell the same land covered by the leasehold interest was not sufficient notice of circumstances to put appellee or its assignor on inquiry as to fraud.

[10, 11] An exceedingly cautious man, with notice of these circumstances, might have gone into a thorough and minute investigation to find out whether there was fraud on the part of Prentice in relation to his clients, and whether the Prentice receiving a quitclaim deed from Johnson was any relation to the Prentice who had acted as attorney, but the test is, not what an extremely cautious person might do, but what a prudent one should do. The prudent man is not compelled to investigate for fraud upon a mere suspicion. Fraud is not presumed and must be clearly shown. If some name appears in the chain of title similar to another name, or in fact the same surname, must there be an investigation to see whether there has been any collusion or fraud? Must the purchaser look through the court's orders and investigate the sale of the minor's property and consult witnesses to see if in any way there has been a fraudulent conspiracy between the guardian and the attorneys? Must he institute an investigation to find out if a lease made to a party whose name appears on the record is a lease to the attorney's stenographer? How far must such inquiry go? Must he visit the appraisers, and investigate whether there was any collusion between the appraisers and the guardian, or the appraisers and the attorney? If so, then records of title amount to little.

Public records, clear upon their face and showing a proper chain of title, are necessary to carry on the business of the country. If all this investigation must be made, then the foundation of titles is weakened, and reliance on records is largely destroyed. While there may be wrongs committed now and then, it is better that such wrong occur once in a while than that the whole structure upon which titles stand shall be weakened. Of course, these observations do not apply if there be actual notice of fraud, or if parties have such facts and circumstances presented that would demand an investigation upon the part of honest people. Appellee here, and its assignor, have, as the record shows, spent large sums of money in developing this property. The exact amount is not disclosed, but it is a fair inference from the record that very large sums have been spent. There was apparently no thought of any questioning of the title until some six years after the deeds were made, and until there was some chance for oil development.

[12] Defendants (appellants) ask by counterclaim that said oil lease be canceled, and that possession of their allotment be delivered to them, and that they have judgment against plaintiff (appellee) for rents and profits. This in effect is asking this court to set aside the deeds to Johnson approved by the county court of Wagoner county. That particular relief is not in terms sought, but it amounts to the same, for the court is asked to render decree giving possession of the land to appellants. The attempt is to set aside by collateral action the effect, at least, of the proceedings in the county court of Wagoner

county. For instance, counsel for appellants argue that P. S. Johnson, in buying the land at guardian's sale, did not pay the full price in cash as provided by the state statutes. Surely this court cannot try such question. The state court found the law was complied with. To comply with the law Johnson must have paid cash, and, the state court having so found, that question would be reviewable upon appeal, but not be the subject of a collateral attack. If Johnson was in a conspiracy, it is not shown by the record presented to us, as we have hereinbefore pointed out. He had a good title as far as the record shows, and could deed to any one. If this were an action in the proper forum to set aside the deed to Johnson, and he could be shown as involved in a conspiracy to cheat and defraud these minor wards, a very different question would arise. But no one would have the temerity to claim that, because Johnson deeded to Prentice's daughter an interest in the land, he was party to a fraudulent conspiracy. Johnson held by virtue of a solemn deed under a decree of the state court, which had jurisdiction of the parties and of the subject-matter. The relief asked by the counterclaim amounts, if granted, as we have heretofore stated, to an action upon the part of this court setting aside the findings of the county or state court, and there is no power in this court in this collateral proceeding so to do. It is apparent that the relief asked in said counterclaim cannot be granted.

On the record of this case we feel compelled to hold that appellee was a bona fide purchaser for valuable consideration without notice of fraud. In this we are not to be understood as holding that as between Prentice and the minor wards there was no fraud. That is a question that may arise in an action between them. We are not called upon to decide it, and we do not decide it. If the question were here on an accounting between the attorney and the minors, or on some direct issue between them, where rights of third parties were not involved, our conclusion might be quite different. The facts disclosed by this record cannot be altogether pleasing to a court of equity. There are some suspicious circumstances, viz. the lease to Prentice's stenographer, Yeager; the deed of Johnson back to Prentice's daughter; the deed of Johnson to his father; and, even though some years had transpired, the granting of a lease to Prentice by his daughter and Johnson, father of the grantee, under the guardian's deeds; and the royalties received by Prentice under the lease. The apparent attempt on the part of Prentice, as evidenced by the Yeager lease and the lease from his daughter to him, to hold possession of the oil rights in the land formerly owned by wards of the guardian for whom he was attorney, is not in keeping with that fidelity to a trust which not only the law, but good ethics and common honesty, demand. It may not be amiss to quote from one or two cases on the subject of the duties of those acting in fiduciary relations. In Trice et al. v. Comstock et al., 121 Fed. 620, 623, 57 C. C. A. 646, 649 (61 L. R. A. 176), this court said:

"From the agreement which underlies and conditions these fiduciary relations, the law both implies a contract and imposes a duty that the servant shall be faithful to his master, the attorney to his client, the agent to his principal, the trustee to his cestui que trust, that each shall work and act with

an eye single to the interest of his correlate, and that no one of them shall use the interest or knowledge which he acquires through the relation so as to defeat or hinder the other party to it in accomplishing any of the purposes for which it was created."

In Stanwood v. Wishard et al. (C. C.) 128 Fed. 499, 502, the court said:

"The attorney must not purchase or obtain an interest in the property the subject of litigation, adverse to the interest or rights of the client; and the fact that the attorney furnishes the money with which to make the purchase does not lessen the rights of the client. In short, the attorney must keep hands off in every sense, excepting to faithfully inform and represent the client, and in all respects conserve the interests of the client; and whether during the time he is acting as an attorney, or after such relations have ceased, and whether with his client's money or with his own money. he purchases or acquires an interest in the property in any way the subject of litigation, a court of equity will decree that he holds such interests as trustee for the client. The cases are uniform upon the subject."

In the case of Daniel v. Tolon, 53 Okl. 666, 157 Pac. 756, 4 A. L. R. 704, it was said by the court:

"Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influences exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached, if no such confidential relation had existed."

The rule is as well stated in Harper v. Perry, 28 Iowa, 57, as can be found, and is as follows:

"The application of this rule forbids the attorney to purchase, against the interest of his client. property sold in the course of litigation in which he is retained, and such sales will be held void, or the attorney will be held as the trustee of his client, and required to account as such."

As appellee is an innocent purchaser for value without notice of any fraud, it is not affected by the conduct of the attorney.

The decree of the trial court is affirmed.