## J. G. Elliott, Plff. in Err., *v.* Joseph Tyler.

In an action of covenant, to recover the purchase money of land from the purchaser, where the vendor, the plaintiff, agreed to give a good title, *held,* that the fact that when the plaintiff purchased the title he sustained the relation of attorney to the parties whose property was sold, so as to disqualify him from purchasing in his own right against their interests, renders his title so doubtful that the purchaser from him is not bound to receive it, but may refuse payment.

An attorney cannot buy in, at a treasurer's sale, and hold as his own, the land of his client.

Under such circumstances it is for the plaintiff to show good title, in order to recover the purchase money.

(Argued October 14, 1886. Decided November 1, 1886.)

NOTE.—An attorney at law cannot acquire a title in hostility to that of the client by whom he is employed. Barrett v. Bamber, 81 Pa. 247; Lockhard v. McKinley, 9 W. N. C. 11; Henry v. Raiman, 25 Pa. 354, 64 Am. Dec. 703. Unless it be with the client's consent. Maynard's Case, 1 Walk. (Pa.) 472; Garner's Appeal, 1 Walk. (Pa.) 438. But in so doing he is bound by the same trust obligations as the client in respect to the land, where he takes an assignment of the client's claim. Fellows v. Loomis, 170 Pa. 415, 33 Atl. 266. If the relationship of attorney and client does not exist as to the property in question, the rule does not apply. Smith v. Brotherline, 62 Pa. 461; Devinney v. Norris, 8 Watts, 314; Dobbins v. Stevens, 17 Serg. & R. 13.

October Term, 1886, No. 100, W. D., before GORDON, TRUN-KEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Mercer County to review a judgment on a verdict directed for defendant in an action of covenant. Affirmed.

This action was brought by J. G. Elliott against Joseph Tyler to recover the amount of money which defendant agreed to pay for a certain piece of land, by an agreement of purchase, the due execution of which is admitted in this suit and by which the plaintiff covenanted that he would make to defendant a good and sufficient title.

The plaintiff showed a prima facie title by a treasurer's deed to him on the sale of the land for taxes in 1882 as land of the heirs of one Adams. It is admitted that Adams had a good title to the land. Defendant contended, while admitting that plaintiff had shown prima facie title by his title deeds, that he did not in fact have a good title, because he did not own the land in his own right, but as trustee for the heirs or some of the heirs of Adams; or whether he does or does not own such title is a question of such serious moment and casts a shadow of such a serious degree upon the title as to render it unmarketable, and that, therefore, it would be inequitable to compel him to accept the title under the agreement, and to pay the price stipulated. Defendant alleged that at the time when the plaintiff purchased the title he (plaintiff) sustained the relation of attorney to the parties whose property was sold, or to such other of the heirs of Adams as rendered him disqualified from purchasing and holding against their interest; or that he had at a previous time sustained a relation, and that the influence of that relation extended to the time of the purchase by the plaintiff of this title at the treasurer's sale.

The court, MEHARD, P. J., charged the jury, *inter alia,* as follows:

It is conceded upon both sides that in 1878 the plaintiff, who was a practising attorney at this bar, was employed to institute and conduct proceedings in partition of the property which is the subject of controversy in this case; that as such he appeared as attorney for all of the heirs of Mr. Adams save one. They were all named as plaintiffs in the proceedings in

partition, save one who was named as defendant, and the plaintiff in this case was their attorney.

[The record, as well as the testimony, shows that those proceedings were conducted through until in March of 1879, or possibly April, when a rule was issued upon those heirs to accept or refuse the purparts of the land, it having been divided by the appraisers into three purparts. At this point, the plaintiff alleges that his relation to these parties, as attorney, ended, and that, therefore, he would not thereafter be disqualified from purchasing and holding in his own right an interest in the subject-matter of that suit adverse to his clients' interests. And it is for the court to say, under the evidence, whether that relation ceased at that time or whether the influence of that relation, if it did in contemplation of law cease, extended to the time of the purchase of this property, or, at least, whether the question as to that fact is of such a serious and doubtful kind as would render it inequitable to compel the defendant in this case to accept the land and pay the purchase money.

In aid of the solution of that question the learned counsel for the plaintiff has illustrated the argument—perhaps it was so illustrated upon both sides—by the fact that the law of this state allows the attorney, who conducts proceedings in partition, a fee out of the fund arising from the land, or out of the land itself.

I do not think that that is the test as to the length of time that the relation of attorney and client exists, because that fee is paid as well by those against whom the attorney acts as by those for whom he acts. That fee is paid to him rather in the capacity of a clerk conducting the proceedings, as such, than as a confidential adviser. But the relation of confidential adviser would exist between the attorney and those of the parties to the suit for whom he appeared.]

Now, gentlemen of the jury, we must place ourselves in the relation of those parties as nearly as we can, in order to ascertain what the relation was between them at the time the treasurer's sale took place.

[When those parties caused proceedings in partition to be instituted, what would be their object? It would be, in the first place, to have the land divided, if it could be divided, into shares or parts proportionate to their several interests, and to have those shares allotted to them each in severalty. Or, if that could

not be done, then to have the land appraised and sold with the purpose of realizing out of it in money that which would represent their shares in the land. Now, that would be the object of a person instituting proceedings in partition. If that be true, then we could not conclude, as a matter of law, that the relation between the client and attorney would end when only the shadow of the client's right had been secured and its substance was still· beyond his possession. In view of this, then, we conclude that the relation between the plaintiff and his clients would not necessarily end at the time when the rule was issued for the heirs to accept or refuse.]

That record shows that one of the parties plaintiff, the client of the plaintiff here, who owned a twentieth, accepted the three purparts into which that land was divided and gave a recognizance for the payment of the balance of the purchase money to the other heirs, according to their several rights.

[That party plaintiff, then, had in possession when the court allotted the land to her, what she had sought by the institution of the proceedings; but the others were still out of the possession of either the land or their money, and their rights in the land were converted by these proceedings into money. We could not say, as a matter of law, that those persons were not still depending upon the attorney whom they had employed to bring that suit and carry it on for the further accomplishment and realization of their rights. Now, if that is true, we could not say, as a matter of law, that this title is a good one; but we are compelled to say that there is such a serious doubt as to its validity that it would be inequitable to compel the defendant in this case to accept it and to pay the purchase money.]

It is not competent here to decide whether that title is good as against these persons, or whether it is not. The question we have to decide is whether there is such a doubt as to the rights of these other persons, whose interests and rights were represented in that recognizance, to come in and demand the payment of their rights in that land, as to make it inequitable to compel the execution of this contract.

The plaintiff has further given in evidence a quitclaim deed from Mrs. Wilson, the purchaser of this land by proceedings in partition. The evidence shows that Mrs. Wilson had in that land a one twentieth interest; that the other nineteen twentieths were owned by other persons; that the land was sold to and ac-

cepted by her for $1,060. Out of that the costs would come, amounting to a considerable sum. If the land were worth what she purchased it for, she would have invested in that land less than $50, while the other persons who owned the nineteen twentieths would have nineteen times as much invested in the land.

The law of Pennsylvania does not disqualify an attorney from purchasing the subject-matter of a suit, about which he had been consulted and employed, because the attorney has perpetrated any fraud upon his client. It does not proceed upon that principle. The doctrine proceeds upon the principle of public policy. The relation existing between an attorney and his client is one of close confidence. The client goes to his counsel because the client does not know the law and does not know how to protect his right under it, and he relies upon the counsel to protect his rights, and it is the counsel's duty so to do until those rights have been secured, or until there has been an unqualified severance of their relations clearly and distinctly understood by both parties.

In this case the evidence shows that the clients of the plaintiff all resided at a distance, none of them residing in Mercer county. What information they had as to the status of the proceedings, we do not know; the evidence does not disclose. Whether or not they were informed as to their rights under the recognizance or termination of the proceedings in partition, we do not know; the evidence does not show.

[The testimony is that the plaintiff's relation with those clients ceased on the day when the rule to accept or refuse was issued.]

From that, then, we would infer that they, at least, had no communication from him as to the status of the proceedings or as to their rights under them.

Now, when Mrs. Wilson gave to the plaintiff here a deed—whatever was the consideration of that we do not know, farther than this, that it was not $1—she was giving up a piece of land in which she had a small amount of money invested, and the others, who had been the clients of the plaintiff, a much more considerable sum. If the plaintiff should rely upon that deed for his title he would take it with its load; that is to say, with the encumbrance of this recognizance which the grantor had given for the payment of the other shares in the land.

[But, aside from that, the evidence is not so clear and so dis-

tinct that the other clients of the plaintiff here were not relying upon him for the securing of their money out of this land, at the time when the treasurer's sale took place, or that the influences of the previous relation which is admitted to have existed between the plaintiff and those persons had expired, as to warrant this court in determining and saying here that the defendant is not in serious danger of material loss if this title is forced upon him.]

Now, there may be other things which should be said here, but the reasons already given have led to a conclusion, and it therefore would be fruitless to spend further time in considering the questions in this case.

[As I said to you in the beginning, the burden of this case is upon the court, and, therefore, it is your duty to obey our peremptory instructions, which are, that you render a verdict in favor of this defendant.]

The jury returned a verdict for defendant, upon which judgment was entered; and plaintiff took this writ, assigning as error the portions of the charge enclosed in brackets.

*T. Tanner* and *B. Magoffin,* for plaintiff in error.—That a party will not be allowed to purchase and hold property for his own use and benefit, when he stands in a fiduciary relation to it, if contested by the party entitled as *cestui que trust* is indisputable. . . . The relation, however, must be one in which knowledge, by reason of the confidence reposed, might be acquired, or power exists to affect injuriously the interests of the *cestuis que trust,* or advance that of the trustee. The reason of the law is its life, and unless some advantage might be gained by reason of the relation, the principle does not apply. Chorpenning's Appeal, 32 Pa. 316, 72 Am. Dec. 789.

It has accordingly been held that when an attorney buys in a title, outstanding or adverse, to land as to which he has been consulted or employed, he buys for his client if his client should elect to take it. Smith v. Brotherline, 62 Pa. 469.

That a purchase of the adverse title after the relation of counsel and client has ceased is forbidden equally with a purchase during the existence of such relation (Galbraith v. Elder, 8 Watts, 81), and that an attorney at law, conducting the sale of real estate upon execution, cannot purchase the land for his own

benefit, to the prejudice of his client, for a less sum than the amount of the claim upon which it was being sold. Leisenring v. Black, 5 Watts, 303, 30 Am. Dec. 322.

But an attorney who has been consulted about a title which is going to be sold on an execution is not excluded from becoming a purchaser. Dobbins v. Stevens, 17 Serg. & R. 15.

Where the control of trust property is taken out of the power of the trustee by the act of the law or other paramount authority, he will not be regarded as standing in a fiduciary relation to it. Fisk v. Sarber, 6 Watts & S. 24; Chorpenning's Appeal, 32 Pa. 317; Hall's Appeal, 40 Pa. 414.

*S. Griffith & Sons* and *John McClure,* for defendant in error. —The various authorities referred to in the argument for the plaintiff in error do not apply to the facts of this case, nor do they rule the case, especially in this controversy, where the action is not between any of the parties plaintiff in the partition proceedings and Elliott, but between Elliott and the person to whom he sold the land and bound himself to make a good and sufficient title for the same. The correct doctrine in regard to such sales is found in Bartholemew v. Leech, 7 Watts, 472.

The title was at least doubtful and defendant cannot be compelled to take it. Dalzell v. Crawford, 1 Par. Sel. Eq. Cas. 37; Nicol v. Carr, 35 Pa. 381; Herzberg v. Irwin, 92 Pa. 48; Holt's Appeal, 98 Pa. 258.

PER CURIAM:

We agree with the court below, that Elliott's title was of a character so doubtful that Tyler, his vendee, was not bound to receive it. An attorney cannot buy in, at a treasurer's sale, and hold as his own, the land of his client. Whether such relation existed between the plaintiff and Adams' heirs, at the time of the sale, is a question that Tyler cannot be called upon to solve, and until it is solved, and that in favor of his vendor's title, he may refuse payment.

The judgment is affirmed.