## HARRISON *et al.* v. MURPHEY.

No. 2885.    Opinion Filed July 22, 1913.

Rehearing Denied November 4, 1913.

(135 Pac. 1137.)

**ATTORNEY AND CLIENT**—Duties—Purchase at Foreclosure.  No person who occupies a position of trust or confidence in relation to a proposed sale can, by taking advantage of his situation, acquire the property at the sale on his own account, to the injury of the person confiding in him.  This rule proceeds on the principle that no person will be permitted to purchase an interest where he has a duty to perform inconsistent with the character of the purchase.  But where an attorney buys land from the vendee of same at a foreclosure sale, the mere fact that at some previous date he had been attorney for the original owner of the land does not preclude the attorney from purchasing the land and holding same in his own right after the relation of attorney and client has terminated, and in the absence of any fraud, or the use or abuse of information derived while the relation existed, and where the attorney had no duty to perform inconsistent with the purchase.

(Syllabus by Brewer, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Dick Harrison and others against George A. Murphey.  Judgment for defendant, and plaintiffs bring error. Affirmed.

See, also, 35 Okla. 135, 128 Pac. 501.

*Chas. F. Runyan,* for plaintiffs in error.

*W. W. Noffsinger* and *Y. P. Broome,* for defendant in error.

Opinion by BREWER, C.  This suit was commenced in the United States Court for the Western District of Indian Territory, by bill in equity, for a declaration of trust, for an accounting, and the cancellation of certain deeds.  The cause after statehood was transferred to the superior court of Muskogee county, and on January 9, 1911, was, by order of court, on agreement of the parties, referred to Hon. Charles A. Cook, as special

master, to hear the evidence and report his findings of facts and conclusions of law based thereon, which he did, and filed same, with a copy of all the evidence taken, in the superior court on February 23, 1911.

The issues involved will sufficiently appear from the findings of fact made by the master, and which were later adopted and approved by the court. The findings are:

"From the testimony, admissions in the pleadings, admissions on the hearing, deposition and exhibits, and after hearing arguments of counsel and considering the authorities submitted by counsel for plaintiffs and defendant, I find the following facts:

"(1)   That the defendant, George A. Murphey, an attorney at law, was employed by the plaintiffs as their attorney in 1905 to recover from Dunleavy and Brakel the land which plaintiffs had conveyed to them, and to obtain a settlement with them; for which professional services plaintiffs entered into a contract in writing with defendant's law firm, Hutchings & Murphey, wherein they promised to pay to them a fee of $500.

"(2)   That defendant, pursuant to his employment as attorney, obtained a settlement with Dunleavy and Brakel of the matters in controversy between them and plaintiffs, his clients; that defendant faithfully represented his clients in said settlement, and secured for them all the rights to which they were justly and equitably entitled.

"(3)   That the fee of $500 was a reasonable fee for the services rendered and rights recovered. That the said fee was paid as a part of the purchase money for the Harry Harrison tract of land; the residue, to wit, $500, being paid in cash.

"(4)   That $1,000 was a full value of the Harry Harrison land so conveyed to the defendant at the time of such conveyance, and the transaction was fair and *bona fide*.

"(5)   That the defendant as attorney for the plaintiffs, Dick Harrison, Nellie Harrison, and Mattie Harrison, drew the note and mortgage executed by plaintiffs to W. F. Brakel on the 16th day of January, 1906, which was thereafter transferred and assigned to D. H. Middleton, under and pursuant to the terms and conditions of which the land therein conveyed was afterwards sold at foreclosure sale. That plaintiffs understood the transaction, when the note would become due, and the nature and conditions of the mortgage securing same.

"(6)   That, upon the closing up of the matters between the plaintiffs and Dunleavy and Brakel, to wit, on the 16th day of January, 1906, the relationship of attorney and client ceased

between the defendant and plaintiffs, and was not thereafter renewed.

"(7) That afterwards, to wit, on the 6th day of October, 1906, the said W. F. Brakel, mortgagee, duly assigned for value the said note and mortgage to D. H. Middleton.

"(8) That said D. H. Middleton, after said note had matured and default in the payment of the note was made, advertised and sold the said land under the powers of the mortgage at public sale to the highest bidder for cash, after having complied with the conditions and terms of said mortgage, on the 12th day of February, 1907, when and where F. E. Coss became the last and highest bidder for the said land at the request and for the use of D. H. Middleton, at the price of $4,200, and the said D. H. Middleton, assignee of the mortgage aforesaid, duly conveyed to him the said land. I further find that the said sale was fair in all respects, and was regularly conducted, and that prior to the sale plaintiffs were notified thereof.

"(9) That said firm of Hutchings & Murphey were, at the time of said sale, and for a long time theretofore had been, the retained attorneys for the said D. H. Middleton, and as such attorneys the defendant was present at said sale and represented the said D. H. Middleton in having the said land sold.

"(10. That afterwards, to wit, on the 14th day of February, 1907, the said F. E. Coss sold the said land to the defendant, George A. Murphey, by warranty deed, and D. H. Middleton also transferred to him the note and mortgage, there being a balance due upon said note, and the said George A. Murphey paid to him the sum of $4,563.60 for said land and the balance due upon said note and mortgage, subject to the first mortgage of $3,000 on the Dick and Nellie Harrison land. That prior to the sale of said land and bidding in of the same by F. E. Coss for D. H. Middleton, there was no agreement or understanding between the defendant and Middleton concerning the purchase of the same.

"(11) That the price paid for said land at said sale, subject to the prior incumbrances thereon, was a fair and adequate value thereof at that time.

"(12) That the allegations of actual fraud made by the plaintiffs are not sustained by the evidence, that no actual fraud was committed nor false representations made by defendant to plaintiffs or either of them, and that no injury resulted to plaintiffs by reason of the purchase of said land by defendant from D. H. Middleton or F. E. Coss, and that no advantage was taken of plaintiffs by defendant.

"Conclusions of Law.

"My conclusion of law deduced from the above found facts is that the plaintiffs are not entitled to recover against the defendant."

The evidence has been examined, and it is believed that the facts found reflect the truth shown by the evidence, and are fully justified. In fact we think they are sustained by a very great preponderance of the evidence. Therefore it only remains to be determined whether the court erred in adopting the master's conclusions of law based on the facts.

The contention of plaintiffs, made by the issues and fought out in the evidence, is that they had been defrauded out of their property through the bad faith and fraudulent representations and acts of the defendant. The findings of the master, approved by the court, have foreclosed this contention against them. Now they urge that, because at one time he had represented the plaintiffs in a controversy between them and other parties, and received a fee therefor, such fact precluded the defendant from ever afterwards acquiring the property, and that, if in fact he has acquired the legal title thereto, he holds same as a trustee for plaintiffs.

It is a well-established principle in equity that no one who occupies a place of trust or confidence in relation to a proposed sale can, by taking advantage of his situation, acquire the property at the sale on his own account, to the injury of the person between him and whom the relation of trust and confidence exists. This principle proceeds on the rule that "no person will be permitted to purchase an interest where he has a duty to perform inconsistent with the character of the purchase." These rules apply no less to an attorney at law, where the relation of attorney and client is established, than to guardians, executors, trustees, etc. *Case v. Carroll,* 35 N. Y. 385; *Torrey v. Bank of Orleans,* 9 Paige (N. Y.) 650.

Many cases have been collected in the brief of plaintiffs wherein the purchase by an attorney of his client's lands has been held to be for the use and benefit of the client, but they all proceed upon the theory that there has been an abuse of the

confidential relation by which the attorney would benefit and the client would suffer loss if the transaction was allowed to stand as made. One of the leading cases relied on by plaintiffs is *Eoff v. Irvine*, 108 Mo. 378, 18 S. W. 907, 32 Am. St. Rep. 609. In that case the client purchased a lot in 1886 from a grantor whose title rested on a tax deed. A doubt arising in his mind as to the validity of his title, because of a decision of the Supreme Court *ad interim*, he took his abstract of title to a firm of lawyers for examination about May 1, 1887. On June 1, 1887, a former part owner of the land conveyed to a stranger a one-half interest, and in September following the stranger conveyed to one of the firm of lawyers for a small sum. In a few weeks the lawyer procured a deed, from another former owner, to the other one-half interest, and shortly thereafter transferred the whole to his mother without consideration. The attorneys, from an examination of their client's abstract, discovered the weakness of his title, and advised him to purchase these outstanding claims of title for a sum which was larger than he had originally paid for the lot. The client, displeased at this advice, withdrew his abstract from their hands, and the attorneys then for a much smaller sum bought the outstanding title, and asserted it against the client; they were held to hold the title thus acquired as trustees for their client; and notwithstanding the fact that the relation of client and attorney had been dissolved, by the withdrawal of the abstract, before the attorneys took the deeds. It is obvious this decision was based on the fact that the attorneys had misused the knowledge they obtained through the confidential relation, to their own advantage and to their client's hurt.

And again in *Briggs v. Hodgdon*, 78 Me. 514, 7 Atl. 387, it is held:

"An attorney who is employed to sue on a debt, attach real estate, procure a judgment, and levy the same upon the land attached is estopped from denying the validity of his own work, to his own profit or advantage; and, when such attachment and levy are defective, and he purchases the land levied upon, the title that he takes at once inures to the judgment creditor."

The case very properly holds that an attorney cannot, through either want of skill or with sinister motive, perform for his client defective work, resulting in lodging in his client a defective and defeasible title, and then take advantage of his own imperfect work by buying in a title for himself good against the imperfect one acquired for his client.

Other cases dealing with the subject are: *Baker v. Humphrey,* 101 U. S. 494, 25 L. Ed. 1065; *Stockton v. Ford,* 11 How. 233, 13 L. Ed. 676; *Henry v. Raiman,* 25 Pa. 354, 64 Am. Dec. 703; *Lynn v. Morse,* 76 Iowa, 665, 39 N. W. 203; *Elliott v. Tyler* (Pa.) 6 Atl. 917; *Valentine v. Stewart,* 15 Cal. 387; *Garinger v. Palmer,* 126 Fed. 906, 61 C. C. A. 436. These cases illustrate the contentions of plaintiffs, and are thought to be among the strongest cases among the many cited. The doctrine they announce is most salutary, and will, in cases where the facts bring the cases within the rules, be vigorously sustained. But in this case we do not think the doctrine of the cases cited is applicable under the facts.

The situation of the parties, as shown by the evidence, was this: The plaintiffs, before they had any dealings with defendant, had been, from time to time and on various occasions, borrowing money from Dunleavy. They had about reached the limit of their credit. Instead of giving mortgages on their land to secure the money they had borrowed, they had conveyed same to Dunleavy in fee simple. When they employed the defendant they had neither money nor land. They agreed in writing to pay defendant's firm $500 to arrange their business with Dunleavy and get their land reconveyed to them. Dunleavy asserted full ownership. After much efficient effort, accompanied by pursuasion and threats of litigation, an accounting was had with Dunleavy, whereby it was shown positively by checks, notes, receipts, and vouchers that the plaintiffs were due him $6,800. A settlement was arranged on this basis, and their lands were all deeded back to them upon satisfaction of the debt. Of the lands recovered, the lands of a dead minor child were sold to defendant, for which they were receipted for the fee they owed him, and

received in cash $500. The proof tends to show this was a big price for that land. To pay Dunleavy the money they had received from him and profligately squandered, they executed two mortgages on the other lands deeded back to them; one for $3,000 to a loan company, which was paid to Dunleavy, the other for $3,800 to Brakel, this mortgage to draw eight per cent. interest and to run for one year. This was all defendant was employed to do, and his work seems to have been entirely satisfactory at the time, and to have been faithfully and efficiently performed. His firm received its fee, and the employment was ended on January 16, 1906. After this, on account of some transactions in no way connected with the relation of attorney and client at one time existing, these parties became very hostile towards each other. In October, 1906, Brakel sold the $3,800 note and mortgage to D. H. Middleton, a banker, for its face and accrued interest. When it became due and was not paid, it was turned over to Hutchings & Murphey, who were and had been for years the salaried attorneys for Middleton, for collection or foreclosure. Default was made, and in strict compliance with law the mortgage was foreclosed and the lands sold to F. E. Coss for $4,200. Later the lands were conveyed to defendant for $4,563.60, the amount due Middleton by plaintiffs, subject to the first mortgage of $3,000. There was no fraud, no false statements, no overreaching of plaintiffs; the mortgage was their own deed; is nowhere attacked; was to secure money they had used; and because they defaulted and did not pay it, the security was sold. It is not shown that the defendant could have used, or needed to use, much less abuse, any information gained or position or situation attained through the relation of client and attorney, once existing. He had no duty to perform inconsistent with the purchase; there was no defect in his former work to be assailed; no outstanding title was procured; no latent defect was availed of; when his relation terminated he left his clients possessing the fee. Had they met their obligations according to their tenor, there would have been no trouble. No trouble they now have is traceable to defendant. It cannot be the law that an attorney,

in the absence of fraud or an abuse of confidence in some way, is forever debarred from acquiring property, honestly and in good faith, solely because it had formerly belonged to a person who at some time in the past had been his client.

It only remains to notice a contention now made in plaintiffs' brief, viz., that the evidence fails to show that the consideration for the mortgage was solely for "money loaned," and that, therefore, plaintiffs could not legally waive the right of redemption in the mortgage, as was done, under section 4763, Mansf. Dig. Ark. 1884, and that therefore they were entitled to redeem the land from the foreclosure sale. It is a sufficient answer to this contention to say that this suit was not projected, nor did it proceed, upon any such theory. This point—*i. e.,* that the consideration was not solely for "money loaned"—is not raised in the issues, nor was proof directed to it before the master, nor was a finding made or asked as to the fact.

The mortgage introduced in evidence, executed by plaintiffs, and not attacked, recites: "The sole consideration of this mortgage being for money loaned to the party of the first part," etc. Had the question of the truth of this provision of the mortgage been raised in the pleadings, and rights asserted because of its falsity in fact, and the point had been raised before the master, then, no doubt, the evidence would have been developed on the point, and the truth made to appear in a finding of fact by the master. As it is, mere fragmentary items of evidence, incidentally brought out in detailing other facts in issue, are, for the first time, presented here as sufficient to overturn the recitals of their own deed. This is the kind of situation that aptly illustrates the reason for the rule confining the parties here to the theory they tried their case on below. This rule has been invoked in numerous cases. *Hamilton v. Brown,* 31 Okla. 213, 120 Pac. 950; *Smith v. Colson,* 31 Okla. 703, 123 Pac. 149; *Herbert v. Wagg,* 27 Okla. 674, 117 Pac. 209; *Wattenbarger v. Hall,* 26 Okla. 815, 110 Pac. 911; *Border v. Carrabine,* 24 Okla. 609, 104 Pac. 906.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.