## BRADY et al. v. VERNOR.

No. 19058.   Opinion Filed Sept. 17, 1929.

Malcolm E. Rosser, for plaintiffs in error.

Charles P. Gotwals and John T. Gibson, for defendant in error.

FOSTER, C. This is an appeal from the judgment of the district court of Okmulgee county, in favor of the defendant, in an action to recover a one-half interest in 160 acres of land. The plaintiff A. C. Brady purchased the land from one Privett, who in turn had purchased from one Nelson Carter, a noncitizen, father of Rennie Carter, the original allottee, and Creek freedman. Rennie Carter died intestate, without issue, and unmarried in 1911, leaving as her next of kin her said father and several brothers and sisters, and the children of one deceased sister, some of whom were minors.

In 1915, the defendant in the instant case,

as attorney, brought an action against the plaintiff Brady and his grantor, Privett, on behalf of all the adult brothers and sisters of the allottees, asking that the land be partitioned and canceling the deed of Privett and Brady on the ground that the father did not inherit. This cause was entitled, "Tennie Rentie v. George Carter et al." This action was defended for the most part by Privett, the grantor of the plaintiff Brady. Privett employed some Tulsa attorneys to defend the action, but they appeared both for Privett and Brady. The plaintiff Spencer thereafter obtained an interest in the land through Brady.

The cause of Rentie v. Carter was on agreement postponed by the district court to await the action of the Supreme Court in the case of Thompson v. Cornelius, 53 Okla. 85, 155 Pac. 602, which was decided February 8, 1916, under which holding Brady acquired no title, because a noncitizen heir could not inherit.

Immediately after the rendition of that opinion, Brady began to try to buy the interests of the brothers and sisters of the allottee, and sought the aid of the defendant whom he knew to be the attorney for the adult heirs. The defendant agreed to help him secure the deeds from his clients, and, pursuant to an understanding, Brady would bring the adult heirs and clients of defendant into the defendant's office and the defendant would prepare the deeds, and after talking with his clients the deeds were usually signed in his office. One or two were signed at other places, but all with knowledge and acquiescence of defendant. However, no unfair advantages are suggested concerning this transaction. For his service in helping secure deeds from the clients of defendant, Brady paid the defendant a fee of $200 or $300.

As was anticipated by Brady, and pursuant to the holding of this court in the case of Thompson v. Cornelius, supra, the case of Rentie v. Carter was decided against the contentions of plaintiffs, and was appealed to this court and affirmed. Privett v. Rentie, 75 Okla. 191, 182 Pac. 898. However, Brady appears to have taken very little or no interest in this appeal, as the district court in its decision had held that Brady owned a six-ninths interest in the land by reason of his purchases from the brothers and sisters of the allottee, clients of defendant.

Pending the appeal in that case, in January, 1917, Brady signed an election to take the land at its appraised value. This was prepared and filed by the defendant. However, by some mistake of the clerk, it was not filed until in September, 1919, after the appeal had been decided by this court. In the meantime, and pending the appeal, one Briscoe had purchased the minor's interest in the land at probate sale, and then Brady decided that he did not want to take the land at the appraised price, and so informed the defendant.

In January, 1919, Brady and Spencer and Briscoe made an oil and gas lease on the property and part of the money was held up pending the mandate from the Supreme Court in the case of Privett v. Rentie, and Brady paid defendant $10 as costs to get the mandate down.

In December, 1919, without any authority from plaintiffs, the defendant had the election of Brady set aside and the property ordered sold in the partition action. The defendant says that he appeared for Tenie Rentie and asked that this be done, but that the purpose of it was to collect his fee. The defendant had a contract for one-half of what he collected or recovered for the adult heirs in the original action. The property was sold on January 26, 1920, to Montie Sampson, and the sale confirmed on February 2, 1920, and soon thereafter a writ of assistance was issued to put Sampson in possession. The plaintiffs had been in possession during all this time.

Brady denies he received any notice that defendant intended to have the land sold or any notice of sale, but defendant says he wrote Brady several letters, and sent him a copy of the notice of sale, and that his letters were never returned. The sale was conducted as by law provided.

The mandate in the case of Privett v. Rentie was not issued until in April, 1920, after the sale of the property. When the writ of assistance was served on Brady, he immediately went and employed another attorney and filed a motion to set aside the sale. This motion was filed in April, 1920, and was not heard by the district court until in February, 1921. In the meantime, and in December, 1920, the defendant bought a one-half interest in the property from Sampson for a good consideration.

The motion of plaintiffs to set aside the sale was overruled by the district court, and on appeal the case was dismissed. Brady v. Sampson, 104 Okla. 72, 230 Pac. 248.

This action was then brought to declare a trust in the interest held by defendant in favor of plaintiffs, on the theory that the defendant was their attorney, and any interest he acquired was for their benefit. The district court decided in favor of the defendant, and to reverse this judgment the plaintiffs rely upon two propositions, as follows: (1)

That .the defendant could not lawfully procure the sale of the property at the time it was sold; and (2) that the defendant cannot hold the property as against the plaintiffs, for the reason that he purchased it while in litigation and while he was representing the plaintiff Brady under a contract to help him get title to the property.

This is an equitable action, and this court will examine the record and affirm the case unless the judgment is against the clear weight of the evidence.

Both of the points argued by plaintiffs are based upon the alleged unauthorized and fraudulent acts of the defendant while acting as the attorney for plaintiff Brady. Assuming that defendant was attorney for Brady, we cannot agree with the argument of plaintiffs under the first proposition. Thereunder several authorities are presented to the effect that a court cannot act sua sponte, and that when an attorney goes into court and asks for an order, he must be representing some one who has an interest in the cause; that an attorney must conduct a cause in accordance with the wishes of his client, and that he must not do something he is told by his client not to do.

Plaintiffs then contend that when defendant asked for the order of sale, he was not representing anyone; that his original clients had sold their interest to Brady, and he knew that Brady did not want the land sold, and had even requested defendant not to sell it; that the sale was made, as defendant says, as attorney for Rentie and for the purpose of collecting his fee. Defendant says he received no instructions from Brady not to sell.

If the plaintiffs be correct in this contention, we think this matter was decided by the district court upon the motion to set aside the sale filed by Brady, and after unfavorable decision was appealed to this court and dismissed. Brady v. Sampson, supra. In that action the same allegations and evidence were relied upon as in the instant case, so far as the right of the defendant to have the land sold is concerned. The sale to Sampson therefore has received approval by the court, and it appears that his title is not here attacked. This amounts to an approval of defendant's action in having the land sold.

Under plaintiffs' second proposition they proceeded on the theory that the defendant, while acting as attorney for Brady, and during the litigation involving the title to the land, acquired an interest in the property adverse to his client.

In Thornton on Attorneys at Law, it is said:

"It is well settled that while the relation of attorney and client continues, the attorney cannot, as against his client, acquire any beneficial interest in, or title to, the subject-matter of the litigation antagonistic to that of his client."

The same authority proceeds to say that the rule is demanded by public policy, on the theory that there should be no temptation on the part of one occupying the relation of attorney to make private gain out of the subject-matter of his professional employment. All courts seem to follow this rule, and it is based upon the highest principle of justice and equity. The purchase of a thing in controversy, in opposition to the title of his client during litigation, is forbidden, because it places the attorney under temptation to be unfaithful to his trust. Cunningham v. Jones (Kan.) 15 Pac. 572, 1 Am. St. Rep. 257.

That an attorney cannot purchase at a judicial sale the property in which his client is concerned, and hold the same without the consent of his client, seems to be well settled, and the question of good or bad faith is immaterial, as well as whether or not it was of advantage to the client. It is against public policy and is forbidden. Olson v. Lamb (Neb.) 71 Am. St. 670; Commissioners v. Hazelwood, 79 Okla. 185, 192 Pac. 217. The rule cannot be disputed. It is supported by all authorities, and is based upon the correct principles of right and justice. Conduct of attorneys should always be above suspicion.

This case presents an entirely different situation than any of the cases relied upon by plaintiff, or than any we have been able to find by independent investigation. The defendant was employed to bring a partition suit for adult heirs, against the plaintiff and others, before the suit was tried. The plaintiff purchased all interest of defendant's clients with the assistance of defendant, and for such assistance plaintiff paid defendant. At the trial plaintiff was decreed the same interest originally alleged to belong to defendant's clients. The land was afterwards sold at a sheriff's sale, under an order in said partition suit, without any request of plaintiff, but as defendant says without any direct request not to sell. At least, the sale conducted by defendant was approved by the court after objections had been filed by plaintiff. Up to the time of the sale, we believe that plaintiff had a right to assume that defendant was acting as his attorney, but he immediately employed an-

other and did not in any way thereafter rely upon defendant. During the pendency of the plaintiff's motion to set aside the sale, but about eight months after the sale, Vernor (the defendant) purchased from the grantee at the said sale a one-half interest in the property, paying a valid consideration, and without any previous understanding to purchase.

The defendant took the position that the sale which he had conducted was valid, and we can see no other position that an attorney could take under like circumstances. His client, Brady (if he was then his client) took the position that the sale was invalid and proceeded to have it set aside. The interest which this defendant purchased during the pendency of this motion was not, in our opinion, an interest during the time that the relation of attorney and client existed, because after the employment of other counsel, it was certainly understood that the relationship had been dissolved.

We are mindful of the fact that an attorney will not be allowed to use information that he has secured while employed as an attorney to secure title to property in which his client is interested adverse to his client, although the employment has ceased and the relationship of attorney and client dissolved. Eoff v. Irvine (Mo.) 18 S. W. 907.

But can it be said here that he received any information as attorney for Brady that he used in order to secure the title? The facts were all well known to both parties. The only question was whether defendant had been unfaithful to his alleged client, Brady, in procuring the sale of the property. and this the court held in defendant's favor. The deed to Sampson was good, and we see no reason why defendant could not purchase an interest in the absence of fraud.

The theory on which all transactions of this kind proceed is that there is an abuse of confidential relation by which the attorney would benefit, and his client would suffer loss if the transaction were allowed to stand as made; that an attorney cannot use the information obtained through confidential relationship to his own advantage. Harrison v. Murphy, 39 Okla. 548, 135 Pac. 1137.

The district court made a general finding in favor of defendant, but it does not appear from the record upon what theory. But all facts supported by the record will be assumed in favor of the judgment. Therefore, the court found that defendant acted in good faith; that he had no understanding with the purchaser at the sheriff's sale that the land was to be afterwards conveyed to him: that he paid a valuable consideration

for it, and that he used no information that he received as attorney for Brady to his benefit and to Brady's injury or loss. The land was gone so far as Brady was concerned long before defendant obtained any interest.

The record further discloses that Brady has accepted his part of the money from the proceeds of the sheriff's sale. The defendant contends that this is a waiver or estoppel, and, in view of our holding above, we do not need to pass upon this question, but it might be said that there is at least a serious question here presented.

Defendant also contends that the same questions here presented were decided adversely to plaintiff in the motion to set aside the sale. The allegations of the motion to set aside the sale and those in the petition in the instant case are very similar as to the conduct of defendant. There are certain statements in the record indicating that the trial judge decided the matter upon this theory, although as stated above the judgment is general. We would not say that to hold that the matter was res adjudicata would be error.

From an examination of the entire record, we cannot say that the judgment of the trial court is against the clear weight of the evidence, and the judgment is therefore affirmed.

LEACH, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

REID, Commissioner, dissents.

By the Court: It is so ordered.