## FLETCHER v. HUFFMAN.

### No. 14186.

Court of Civil Appeals of Texas. Fort Worth.

March 7, 1941.

Charles Nordyke, of Stephenville, for appellant.

Rawlings & Sayers and Nelson Scurlock, all of Fort Worth, for appellee.

SPEER, Justice.

Dr. A. M. Huffman sued J. A. Fletcher and Clareisa Fletcher on two notes, one for $300, and a balance of $393.76 on another.

Allegations were made that the $393.76 was a balance due and unpaid on a series of notes made by J. A. Fletcher and Clareisa Fletcher, at a time when they were husband and wife, to Farm Security Administration, a loaning agency of the U. S. Government, and will be referred to by us as FSA. That a first chattel mortgage lien was given to FSA on the personal property involved in this suit to secure the ob-

ligations given to that agency. That the $300 note was given by J. A. Fletcher and secured by a second chattel mortgage lien on the same property as that securing the FSA loan. That prior to instituting suit, Dr. Huffman, the plaintiff, purchased from FSA the obligation held by that agency, and that because certain instalments thereon were due and unpaid, and under the accelerating clause therein he had declared the whole of the obligation due. Prayer was for judgment for principal, interest, attorneys' fees due on both notes and a foreclosure of the chattel mortgage liens on the property.

J. A. Fletcher filed no answer. Mrs. Clareisa Fletcher answered by general denial and by special pleas to the effect that her former husband, J. A. Fletcher, had abandoned her subsequent to the execution of the note and mortgage to FSA and prior to the making of the $300 note sued on; that she had gathered the growing crops and applied a part of the proceeds thereof to making certain payments on the FSA note, reducing it to the amount Huffman claims to have paid for it; that at the time she made the payments on the FSA note the maturity date thereof was extended by (to) her until 1941, and therefore the suit thereon was prematurely brought. That the $300 note was originally made by J. A. Fletcher to E. B. Hendricks, an attorney, for professional services rendered to her former husband, and transferred to Dr. Huffman without consideration, and that said Huffman had previously entered into a fraudulent scheme and conspiracy with said J. A. Fletcher to purchase both notes and the liens securing them, so that he, the said Huffman, could institute this suit and foreclose said liens and thus fraudulently deprive her, the said Clareisa Fletcher, of her community interest in the property. In addition to this answer, Clareisa Fletcher filed a cross-action against Dr. Huffman and her former husband, J. A. Fletcher, seeking actual and exemplary damages, because of a conspiracy maliciously entered into between the two, in which they schemed to have Huffman purchase the notes and mortgages from the payees thereof, and to institute this suit and thus fraudulently deprive her of her interest in the community property described in the mortgage.

Plaintiff Huffman replied with a supplemental petition and answer to the cross-action, to the effect that J. A. Fletcher was his brother-in-law, was under criminal charges in Hood County and was in jail; that he needed legal representation and could not pay a cash fee, as was demanded by the attorney; that he, Huffman, agreed to endorse Fletcher's note to the attorney, and that, if not paid at a given date, he would pay it himself; that the note was not paid when promised, and that he made payment and took it over from the payee; that the note was secured by a second lien on the personal property, subject to the first lien securing the FSA loan; that the FSA note had been placed in the hands of an attorney for collection and to protect his interest he purchased the FSA note and lien, and paid full value in cash for them. He denied any fraudulent or improper motive on his part in the acquisition of the notes and liens, and denied any fraudulent conspiracy with J. A. Fletcher to improperly procure possession of the property securing the two notes.

The case was tried to a jury on two special issues. The first inquired if J. A. Fletcher had permanently abandoned his wife, Clareisa Fletcher, at the time he executed the $300 note, and the second inquired if Huffman knew that J. A. Fletcher had abandoned his wife when he endorsed the note to Hendricks (the attorney employed by Fletcher). Both questions were answered in the affirmative.

In the judgment entered, it was found by the court that the undisputed testimony showed that plaintiff (Huffman) was entitled to sue on the FSA note and to have a foreclosure of the chattel mortgage lien on the property securing it, and that under the uncontroverted evidence he was the owner of the $300 note and a second lien securing it; that he was entitled to judgment thereon, with a foreclosure of a lien on an undivided one-half interest in the personal property covered by the mortgage. There was a further finding that defendant, Clareisa Fletcher, had failed to sustain her charge in the cross-action, and she was denied relief. Judgment was entered for plaintiff against J. A. Fletcher for the amount due on the two notes, with a foreclosure of the chattel mortgage lien on all of the property as against both J. A. Fletcher and Clareisa Fletcher, but under the verdict of the jury on the issues submitted, the court gave Huffman a foreclosure of his lien securing the $300 note

315

on an undivided one-half interest in the property. From this judgment Mrs. Clareisa Fletcher has appealed.

There are two propositions presented upon which a reversal of the trial court's judgment is sought. The first is said to be "Germane to assignments of error 3, 4, 5 and 6," and the second proposition is said in the brief to be germane to assignments of error 9 and 10. There are no assignments of error in the briefs and, of course, there are none in the record.

Out of a desire to give appellant the benefit of an appeal and a review of the proceedings had, we shall construe, if possible, the "propositions" presented as assignments of error, although it is very difficult to ascertain from them what acts of the court are complained of. By a careful reading of the arguments presented under each, we are assuming that an attempt was made to complain in the propositions of what we gather from the argument. In the first proposition we are given, in a foreword or preface, an elementary dissertation upon how many different ways frauds may be perpetrated and conspiracies consummated, and finally that when properly pleaded and when testimony is offered in support of them, the court should submit special issues to the jury from which to ascertain the facts.

■ We have carefully searched the record for testimony which could be construed as tending to support a fraudulent conspiracy between plaintiff and J. A. Fletcher, and have found none. The most that can be said is that Huffman and Fletcher were brothers-in-law and that Fletcher, at the time of all the transactions involved, was the estranged husband of Clareisa Fletcher, and that they were subsequently divorced. The court found that there was no evidence of fraud or conspiracy, and we think it is borne out by the record. In such circumstances there was no issue on that point for submission.

■ We can see no legal impediment to the purchase by Dr. Huffman of the notes in question, and his consequent right of enforcement of their payment. It perhaps is true that suit for the debt and foreclosure of the lien were hurtful to Mrs. Fletcher, at the time, but no more so than would have been a similar proceeding by FSA as was being threatened by the U. S. District Attorney. There could be no actionable fraud charged to Dr. Huffman for doing what he had a legal right to do. There is no evidence that a fraudulent or wicked motive prompted his acts; but if it could be said that his motive was to injure Mrs. Fletcher by foreclosing the liens on the property, since he had the legal right to do so, the supposedly motivating cause would not render his conduct actionable. 1 Tex. Jur., sections 21, 22, page 629.

The second proposition is lengthy, but boiled down, we think it was intended to assert that since Mrs. Clareisa Fletcher had made certain payments on the FSA note and procured a promise from the holder to extend the maturity, Dr. Huffman (appellee) was not an innocent purchaser of the note and lien, but was chargeable with notice of all defenses to which the payor was entitled, and that it was error for the court to find that, as a matter of law, Huffman was entitled to sue on the note as he did.

The testimony indisputably shows that Mrs. Fletcher had made payments on the note, but that not all past due instalments had been paid; that the loaning agency had placed the note in the hands of the U. S. District Attorney for collection when Dr. Huffman paid it to prevent the foreclosure of the lien on the property upon which he had a second lien; that he had had correspondence with FSA about the debt and lien, in an effort to preserve his own rights therein, and had no information whatever of any agreement or promise to extend the time of maturity. The record does not indicate that any written instrument was executed by the holder of the note and lien, extending maturity to any definite period for a valuable consideration. Mrs. Fletcher testified on this point that when she made a payment on the note in the summer of 1939, there was another coming due in December following, but that Mr. Drake, the District Supervisor for FSA at Granbury, told her that "he would run me on for another year."

■ It is obvious from this record that Mrs. Fletcher had applied the proceeds of parts of the crop to payment of past due instalments on the FSA debt, but did not pay all, and that there was another instalment of $138 due on December 1st, 1939, upon which only $49.82 had been paid when Dr. Huffman acquired the note on January 13th, 1940. The note contained an accelerating maturity clause to be exercised at the option of the holder. Admitting that the District Supervisor for FSA told Mrs. Fletcher that he would run her for another year, assuming that this meant he would

not insist upon prompt payment of the later instalments and assuming that he had authority to bind the Governmental Agency, it does not follow that the date of maturity of other instalments was extended to a definite period of time and does not disclose any consideration for an extension of maturity for any time. It is not contended that there was any promise to pay interest in consideration of the extension of time, nor to do anything that the maker was not already obligated to do. 6 Tex.Jur., section 186, page 826, et seq.

Giving the most liberal construction possible to the matters apparently complained of by appellant, and construing the evidence in its most favorable light in her favor, no error is presented by this record. We think the trial court properly disposed of the controversy, and the judgment should be affirmed. It is our order that this be done.